Ethelene **SPRINGER**, Plaintiff–Appellee,

v.

**WAL–MART ASSOCIATES' GROUP HEALTH PLAN,**
Defendant–Appellant.

No. 89–7456.

United States Court of Appeals,
Eleventh Circuit.

Aug. 10, 1990.

898

Barry V. Frederick, Powell, Tally & Frederick, Birmingham, Ala., for defendant-appellant.

Dennis N. Odem, Florence, Ala., for plaintiff-appellee.

Before FAY and JOHNSON, Circuit Judges, and GIBSON *, Senior Circuit Judge.

JOHNSON, Circuit Judge:

Defendant Wal–Mart Associates' Group Health Plan ("Wal–Mart") appeals from the district court's judgment awarding $20,181.79 in medical benefits to plaintiff Ethelene Springer under Wal–Mart's ERISA-governed employee health benefit plan ("the Plan"). *See* Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C.A. §§ 1001–1461 (West 1985 & Supp.1990).

## I. STATEMENT OF THE CASE

The relevant facts are undisputed. Springer has been an employee of Wal–Mart Stores since April 20, 1987. Springer, her husband Larry, and her young daughter Shalana are "participants" in the Plan, Springer as an "eligible associate," and Larry and Shalana as "eligible dependents." The Plan is self-insured and is funded by premiums from Wal–Mart Stores employees and matching contributions from Wal–Mart Stores. On November 7, 1987,

* Hon. Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

the Springers were injured in an automobile accident caused by the drunk driver of the other car, Jerry Thigpen, who was uninsured. Springer's car was insured by State Farm Insurance Company ("State Farm"), under a policy which included uninsured motorist and medical payments coverage. Following the accident, Springer sued Thigpen for damages, sued State Farm for refusal to pay under its policy, and filed claims for medical expenses under the Plan on behalf of herself, Larry, and Shalana. The Springers' medical expenses totalled $35,181.79.

In response to Springer's claims, Wal-Mart, on December 28, 1987 (as to Larry's expenses), January 14, 1988 (as to Springer's expenses), and February 4, 1988 (as to Shalana's expenses), sent Springer explanatory letters with accompanying "reimbursement agreements" stating that, in accordance with the Plan, Springer's claims could not be processed, nor any benefits awarded, until and unless Springer completed, signed, and returned the enclosed agreements. The reimbursement agreements essentially would have given Wal-Mart the right to seek reimbursement for benefits paid by suing in Springer's name, joining in any lawsuit of Springer's against any third party regarding the accident, or sharing in any settlement agreement received by Springer. Springer refused to sign or return the agreements. Although the Plan, to which Springer had access, provides for a mandatory internal appeals process prior to bringing any lawsuit, Springer did not seek internal administrative review of Wal-Mart's refusal to proceed further with her claims. On April 7, 1988, she brought the present lawsuit against Wal-Mart, seeking payment for the medical expenses. Following an advisory jury trial, the district court entered judgment for Springer on June 6, 1989. *Springer v. Wal-Mart Associates' Group Health Plan,* 714 F.Supp. 1168 (N.D.Ala. 1989).

## II. ANALYSIS

### A. *Exhaustion of Remedies*

██ It is well-established law in this Circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court. This requirement applies both to breach-of-contract actions, such as the instant case, and to actions based on alleged statutory violations. *See Mason v. Continental Group, Inc.,* 763 F.2d 1219, 1225–27 (11th Cir.1985), *cert. denied,* 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986); *accord Merritt v. Confederation Life Ins. Co.,* 881 F.2d 1034, 1035 (11th Cir.1989); *Kross v. Western Electric Co.,* 701 F.2d 1238, 1243–45 (7th Cir.1983). *Cf. Zipf v. American Tel. & Tel. Co.,* 799 F.2d 889, 891–94 (3d Cir.1986) (exhaustion required in breach-of-contract actions, but not in statutory-violation actions); *accord Amaro v. Continental Can Co.,* 724 F.2d 747, 750–53 (9th Cir.1984). Exceptions to the exhaustion requirement do exist, however, most notably "'when resort to the administrative route is futile or the remedy inadequate.'" *Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 846 (11th Cir.1990) (quoting *Amato v. Bernard,* 618 F.2d 559, 568 (9th Cir.1980)). In light of such exceptions, "the decision whether to apply the exhaustion requirement is committed to the district court's sound discretion and can be overturned on appeal only if the district court has clearly abused its discretion." *Curry,* 891 F.2d at 846.

The district court, finding Wal-Mart's non-exhaustion defense "so flimsy as to be nonsensical," *Springer,* 714 F.Supp. at 1176, completely ignored the controlling Eleventh Circuit case of *Mason* cited above. The court merely observed that "[t]here is some disagreement among federal courts over whether ERISA's guarantee of access to federal courts can be postponed or frustrated by an insistence upon the prior exhaustion of burdensome, internal appeal procedures and/or forced arbitration," citing in support an inapposite district court decision from the Northern District of Illinois which, unlike the instant case, involved a claim based on breach of fiduciary duty rather than simple breach of

contract. *Id.; see also Bartz v. Carter,* 709 F.Supp. 827, 828–29 (N.D.Ill.1989). Assuming the district court's reference to "disagreement among federal courts" to refer to the circuit split noted above between the Eleventh and Seventh Circuit decisions in *Mason* and *Kross* and the Third and Ninth Circuit decisions in *Zipf* and *Amaro,* that split is irrelevant to the instant case because Springer's claim is based simply on breach of contract rather than any statutory violation.[1] In short, it is no longer open to serious dispute that plaintiffs in ordinary breach-of-contract ERISA actions must normally exhaust available administrative remedies.

### B. *Excusal*

■ The district court, "[a]ssuming *arguendo* that an ERISA-controlled medical benefits plan can contractually require an exhaustion of some reasonable administrative review process as a precondition to court action," *Springer,* 714 F.Supp. at 1176, found Springer's failure to exhaust the Plan's appeal process excused on three grounds, the first and third of which relate to the concept of futility. The second ground, which we address first, was that both the Plan and ERISA itself give Springer the right to sue in federal court if she has a claim for benefits under the Plan which is denied or ignored in whole or in part. *See id.* This purported ground is frivolous and contrary to the law of this Circuit as established by *Mason.* The Plan language relied upon by the district court merely recites beneficiaries' general rights under ERISA. It is undisputed that beneficiaries of ERISA-governed plans have the eventual right to seek federal court review of benefit denials. The very premise of *Mason* and the other exhaustion cases, however, is that, despite ERISA's silence as to any explicit exhaustion requirement, a strong policy favoring such exhaustion underlies the statutory scheme. *See Mason,* 763 F.2d at 1227; *Kross,* 701 F.2d at 1244; 29 U.S.C.A. § 1133(2) (West 1985) (requiring ERISA-governed plans to afford

"full and fair review by the appropriate named fiduciary of the decision denying the claim"). The very premise of the exhaustion requirement, therefore, is that the right to seek federal court review matures only after that requirement has been appropriately satisfied or otherwise excused.

■ The district court's first ground for excusal was that Wal–Mart "never *denied* Springer's claim but rather only refused to process the claim because of Springer's refusal to execute the so-called 'reimbursement agreement.' According to the Plan's own appellate process, Springer could only appeal from a *written* denial, and there was certainly no written denial." *Springer,* 714 F.Supp. at 1176 (emphases in original). This ground lacks any reasonable basis in the record and misconstrues the Plan's appeal procedure. Section VII of the Plan states:

> Any denial of a PARTICIPANT'S claim by the ADMINISTRATOR will be set forth in writing, stating the reason for such denial with citations to pertinent PLAN provisions. If the claim is denied *or pended* because the ADMINISTRATOR needs more information to make a decision, the ADMINISTRATOR will advise the PARTICIPANT of the specific information needed. If a claim is denied *or* if the PARTICIPANT disagrees with the ADMINISTRATOR'S determination of the amount of benefits paid or to be paid *or some other decision,* the PARTICIPANT may file an appeal as provided herein.
>
> . . . .
>
> No action at Law or in Equity shall be brought to recover under this PLAN document until the appeal rights herein provided have been exercised and the PLAN benefits requested in such appeal have been denied in whole or in part. [Capitalized emphases in original; italic emphases added.]

The Plan's references to claims "denied *or pended*" and to "other decisions," aside

---

**1.** We need hardly add that even if there *were* a relevant circuit split, the district court is bound by controlling *Eleventh Circuit* precedent.

from "denials," with which participants might disagree, make it clear that the fact that Wal–Mart merely refused to proceed with Springer's claims, rather than denying them outright, is irrelevant. If Springer disagreed for any reason with Wal–Mart's refusal to process her claims absent the disputed "reimbursement agreements," she plainly had the right to appeal that refusal under the Plan. We are baffled by the district court's focus on the alleged lack of a *"written* denial." The Plan's broad reference to "some other decision" would not seem to limit the right of appeal to written decisions; in any event, the letters sent to Springer by Wal–Mart plainly constituted written notice to Springer of Wal–Mart's refusal to proceed further with her claims.

■ The third ground relied on by the district court was that resort to the Plan's appeal process by Springer "would have been futile and would have exhausted Springer more than her remedy." *Springer,* 714 F.Supp. at 1176. First of all, we note that Springer never pleaded futility, the issue was not raised in the pretrial order, and no evidence was offered to demonstrate futility. The only suggestion of a futility defense to nonexhaustion occurred during closing argument before the advisory jury, when Springer's counsel asserted:

> Wal–Mart's position is that they have got to file a notice of appeal. They have to say—once Wal–Mart denies a claim, then Wal–Mart says that before you sue us, you have got to file a notice of appeal. Well, where does that appeal go to? It goes right back to Wal–Mart. If they didn't pay it the first time, they are not going to pay it the second time.

Later, counsel commented: "[The Springers] might not have carried out the procedures as Wal–Mart requires. Admittedly, Ethelene did not file that appeal procedure. I don't think it would have done her a bit of good." Counsel's closing argument, of

course, is not competent evidence. In any event, such "bare allegations of futility are no substitute for the 'clear and positive' showing of futility … required before suspending the exhaustion requirement." *Makar v. Health Care Corp.,* 872 F.2d 80, 83 (4th Cir.1989).

■ More fundamentally, the district court made it clear that it based its *sua sponte* finding of futility simply on the fact that "the internal appellate reviewer is basically the same entity as the initial internal decider and … both deciders have an interest in 'holding costs down.'" *Springer,* 714 F.Supp. at 1176. This is insufficient as a matter of law, however, to establish futility. If futility were established by the mere fact that the plan administrator who makes initial benefits decisions and the trustees who review appeals share common interests or affiliations, the exhaustion of internal administrative remedies would be excused in virtually every case. In *Amato v. Bernard,* 618 F.2d 559 (9th Cir. 1980), on which this Court has relied more than once,[2] the Ninth Circuit noted:

> [T]he appeal procedures are not inadequate simply because they are administered by the Trustees themselves, rather than some "neutral arbitrator." The internal administration of such procedures is the very thing contemplated by … ERISA, and indeed is typical of the collectively bargained grievance procedures as to which the exhaustion requirement is usually enforced.

*Id.* at 569.[3]

Because the district court's excusal of Springer from the exhaustion requirement is unsupported by the record and premised on misconceptions of law, the district court plainly abused its discretion in not dismissing Springer's lawsuit for failure to take prior advantage of the Plan's internal appeals process.

---

**2.** *See, e.g., Curry,* 891 F.2d at 846; *Mason,* 763 F.2d at 1226–27.

**3.** For an example of evidence of futility which would support a district court's exercise of discretion in excusing a plaintiff's failure to exhaust administrative remedies, see *Curry,* 891

F.2d at 846 (defendant "controlled the plan's administrative review procedures and exercised its control to deny [plaintiff] meaningful access to those procedures"). There is no claim in this case that Wal–Mart denied Springer access to the Plan's appeals process.

### III. CONCLUSION

For the reasons stated, we REVERSE the judgment of the district court and REMAND the case with instructions to DISMISS the lawsuit.