**E. Elaine STEPHENSON, Plaintiff,**

v.

**PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY,**
**Defendant.**

**Civil Action No. 97–D–1087–N.**

United States District Court,
M.D. Alabama,
Northern Division.

March 20, 1998.

---

William K. Abell, Allen W. Howell, Montgomery, AL, for Plaintiff.

Henry T. Morrissette, Bryan A. Thames, Mobile, AL, for Defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Provident Life & Casualty Insurance Company's [1] ("Provident") Motion For Summary Judgment ("Def.'s Mot.") filed November 5, 1997. Provident filed a Memorandum ("Def.'s Mem.") and an Evidentiary Submission ("Def.'s Evid.") in support of its Motion For Summary Judgment on the same date. Plaintiff E. Elaine Stephenson filed her Brief And Response In Opposition to Provident's Motion ("Pl.'s Resp.") on December 1, 1997 to which Provident filed a Reply ("Def.'s Reply") on December 5, 1997.

For the reasons set forth below, and after thorough and careful consideration of the arguments of counsel, relevant law, and the record as a whole, the court finds that Provident's Motion For Summary Judgment is due to be granted.

## JURISDICTION

The court properly exercises subject matter jurisdiction over this action pursuant to 29 U.S.C. § 1132 (ERISA) and 28 U.S.C. § 1331 (federal question). The parties do not contest personal jurisdiction or venue.

---

1. Provident was named as Provident Life & *Accident* Insurance Company in Plaintiff's Complaint, but indicated in its Answer that it was actually Provident Life & *Casualty* Insurance Company.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is ne genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions in the file, together with affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324; *see also* Fed. R.Civ.P. 56(e).

In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587; *see also Anderson*, 477 U.S. at 249.

## DISCUSSION

### I. PROCEDURAL HISTORY AND FACTUAL SUMMARY

Plaintiff Stephenson originally filed this action on June 12, 1997 in the Circuit Court of Montgomery County, Alabama. Provident filed a Notice Of Removal on July 14, 1997. The instant motion and pleadings ensued. The facts supporting Stephenson's contentions are as follows:

Provident issued to Plaintiff's employer, Uniroyal Goodrich Tire Company, Inc. and/or Michelin Tire Corporation, a policy of group disability insurance ("Policy" Or "Plan") designated "Michelin North America 9603–LTD Plan." (Def.'s Mem. at 2; Def.'s Evid., Ex. A., Neal Aff. at 2, ¶ 7.) The Parties agree and the court finds that the Policy is an employee benefit plan that is regulated by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. (*See* Pl.'s Compl. at 1, 3; Def.'s Answer at 1, ¶ 3.)

Stephenson filed a claim with Provident seeking long-term disability benefits under the Policy which Provident initially granted. Subsequently, however, Stephenson's benefits were terminated for her failure to submit to a "functional capacities evaluation" ("FCE") requested by Provident. This ac-

tion followed: Stephenson seeks the restoration of her benefits. Provident contends that Stephenson's refusal to submit to an FCE justified termination of her benefits and that it is entitled to summary judgment because she failed to exhaust her administrative remedies. Stephenson contends that Provident's definition of "disability" does not have functional capacity or physical capacity as elements. Consequently, Plaintiff contends, the FCE was not required. Stephenson further contends that she is excused from the exhaustion requirement because it would have been futile for her to pursue her administrative remedies.

Prior to this litigation, on September 13, 1994, Stephenson filed a Title II Social Security application for disability insurance benefits in which she claimed that she had been disabled since January 2, 1994. A hearing was held before Administrative Law Judge ("ALJ") Saul W. Nathanson on April 29, 1996. He issued his report on June 19, 1996. (*See* Pl.'s Resp., Ex. 1 at 4.) In short, the ALJ determined that because of severe cervical problems, Stephenson was disabled as defined by the Social Security Act and entitled to disability benefits. (*Id.* 5–6.)

Provident admits to initially paying Plaintiff's benefits. In conjunction with monitoring her condition, Provident corresponded with Stephenson's physician, Dr. Patrick G. Ryan. On August 7, 1996, Dr. Ryan recommended that Stephenson undergo an FCE. (Def.'s Evid., Ex. B.) On September 12, 1996, pursuant to Dr. Ryan's recommendation, Provident requested that Stephenson submit to an FCE so that it could evaluate whether Plaintiff "is capable of performing ANY OCCUPATION within her education, experience and physical capacities." (Def.'s Evid., Ex. C (emphasis in original).)

On September 25, 1997, Plaintiff's attorney sent a letter to Provident that stated as follows:

I have received your policy provisions that allegedly support your request for functional capacities evaluation. You seem to say that an FCE and a medical evaluation are the same thing according to your policy. Rest assured they are not. Physical therapists are not physicians and therefore, my client, Elaine Stephenson, is not required to submit to an examination by one of your physical therapists. Please see Ex parte *Interstate Truck Leasing*, 537 So.2d 53 (Ala.Civ.App.1988).

Further, you sent us your company's definition of disability at my request. Please be advised that this definition of disability is substantially the same as that of the Social Security Administration who has already disabled Ms. Stephenson. Please see attached determination by Social Security.

Therefore, we are not at this time volunteering Ms. Stephenson for functional capacities evaluation until further clarification is made. Please be advised that any attempt to cut off Ms. Stephenson's benefits will result in a suit based on bad faith.

(*Id.*, Ex. D.)

Provident responded on September 27, 1996 with a detailed letter outlining why it felt an FCE was necessary and appropriate, and the medical, legal and Plan bases for its request. (*Id.*, Ex. E.) The letter stated that:

LTD (Long Term Disability) benefits and Mrs. Stephenson's eligibility for benefits ... will be suspended until she re-schedules her FCE appointment. The exam must occur prior to the end of October, 1996, approximately a month from the date of this letter. Otherwise, LTD will be terminated and her rights under ERISA will be explained to her. After re-scheduling it, please notify us and LTD eligibility will promptly be reinstated.

(*Id.*) The Plan Description for Stephenson's Plan also notes that "[t]o continue to receive LTD benefits from the Plan, you must provide, at the insurance company's request, medical proof of your continued disability. This may include requests for physical examinations and physician's notes and statements." (*Id.*, Ex. H at 8.)

Stephenson did not comply with Provident's request. Consequently, on November 23, 1996, Provident sent a letter to the Plaintiff that stated:

In accordance with the group plan for Michelin North America, it states that in order to continue to receive LTD benefits

from the plan, you must provide, at the insurance company's request, medical proof of your continued disability. This may include requests for physical examinations and physician's notes and statements. Additionally, the group plan states that your monthly benefit will stop on the earliest of the following events:

. . .

   2.  the date you are no longer totally disabled, cannot provide medical proof of your total disability, or refuse to submit to a requested medical examination

. . .

As you are aware, [Provident] requested that you attend a Functional Capacities Evaluation and on the advice of your attorney, you did not attend. Your attorney was given until the end of October 1996 to reschedule the Functional Capacities Evaluation which was suggested by your doctor, Patrick G. Ryan. As of today's date, we have not been notified that an appointment has been scheduled for a Functional Capacities Evaluation.

As explained in the paragraphs above, your Long Term Disability claim is being terminated effective November 1, 1996 as you have not abided by the provisions of the group plan by refusing to attend the Functional Capacities Evaluation.

. . .

IF YOU DISAGREE WITH OUR DE-TERMINATION, YOU MAY SUBMIT A WRITTEN REQUEST FOR RECON-SIDERATION, ACCOMPANIED BY DOCUMENTS OR RECORDS FROM YOUR PHYSICIAN IN SUPPORT OF YOUR APPEAL. ALL OF THE IN-FORMATION YOU WISH TO USE FOR YOUR APPEAL MUST BE RECEIVED IN OUR OFFICE WITHIN 60 DAYS AFTER THE DATE OF RECEIPT OF THIS LETTER. *ANY INFORMATION RECEIVED AFTER 60 DAYS WILL NOT BE CONSIDERED.*

This is an Employee Retirement Income Security Act of 1974 (ERISA) qualified plan under which you have certain rights, including the right of appeal. If you have a group Long Term Disability Insurance Plan Booklet, the law is explained therein.

(*Id.*, Ex. F (emphasis in original).) The Plan Description for Stephenson's Plan notes:

If a claim for benefits under the Short–Term or Long–Term Disability Plan is denied, in whole or in part, you or your beneficiary have the right to appeal the denial.

. . .

If you feel an improper decision has been made regarding your claim, you or your duly authorized representative may submit a **written** appeal to your Benefits Office within 60 days after you receive the notice of denial.

(*Id.*, Ex. H at 13.) Pages fourteen and fifteen of the Plan Description describe Stephenson's rights under ERISA. (*Id.* at 14–15.)

It is undisputed that Stephenson and her attorney were aware of Provident's November 23, 1996 termination letter. (*See, e.g., Id.*, Exs. G, I.) The only communication received by Provident from Stephenson or her counsel after the November 23, 1996 letter was an April 14, 1997 letter from Stephenson's attorney. (*Id.*, Ex. A., Neal Aff. at 3, ¶ 8; *see also Id.*, Ex. J.) This letter stated that Stephenson had seen a new doctor—Dr. Ed Wolski—who conducted an FCE, at Stephenson's expense, and concluded that she was "not able to do any job." (*Id.*, Ex. E.) Stephenson's attorney then requested that Provident "reinstate Mrs. Stephenson's disability benefits retroactively immediately in order to avoid litigation." (*Id.*) Attached to the letter were copies of the Social Security ALJ's report, and the FCE report of Dr. Wolski.[2] (*Id.*)

2.  On February 19, 1997, Stephenson wrote a letter to her attorney stating the following:

As I told you over the phone, I took an FCE test. We paid for it ourselves—$750.
I'm faxing you the result sheet signed by my new Dr.—Ed Wolski. . . .

If I can use this, I need to FAX to Provident because the 60 day period has already expired. Of course they have no idea when I really received that letter, and they have to base the 60 days from the date I received the letter. Please advise me what I should do.

Provident responded on May 19, 1997, noting that:

In our letter of November 23, 1996 addressed to Ms. Stephenson, of which you received a copy, she was advised she had 60 days after the receipt of the letter to appeal our decision to terminate in accordance with the ERISA guidelines. She was further notified that any information received after 60 days will not be considered.

As your information has been received beyond the 60 day appeal period, we are unable to give consideration to this request.

(*Id.*, Ex. K; *see also* Def.'s Evid., Ex. A, Neal Aff. at 2, ¶ 8.) This suit followed.

## II. ANALYSIS

As noted, Provident's sole argument in support of its Motion For Summary Judgment is that Stephenson failed to exhaust her administrative remedies. The Eleventh Circuit Court of Appeals has consistently held that "plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." *Counts v. American General Life & Accident Ins. Co.*, 111 F.3d 105, 109 (11th Cir.1997) (*citing Springer v. Wal–Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990); *Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1225–27 (11th Cir.1985)). This exhaustion requirement "applies both to actions to enforce a statutory right under ERISA and to actions brought to recover benefits under a plan." *Counts*, 111 F.3d at 109 (*citing Springer*, 908 F.2d at 899; *Mason*, 763 F.2d at 1225–27.) The policy concerns served by the exhaustion requirement include "helping to reduce the number of frivolous lawsuits under ERISA; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Curry v. Contract Fab. Inc. Profit Sharing Plan*, 891 F.2d 842 (11th Cir.1990) (*citing Amato v. Bernard*, 618 F.2d 559, 567–68 (9th Cir.1980)).

■ Despite this exhaustion requirement, however, district courts are given the discretion to excuse the requirement "when resort to administrative remedies would be futile or the remedy inadequate." *Counts*, 111 F.3d at 108 (*citing Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846 (11th Cir.1990)). Here, Stephenson argues that pursuance of her administrative remedies would have been futile. To substantiate her claim, she must make the " 'clear and positive' showing of futility … required" before the court may suspend the exhaustion requirement. *Springer*, 908 F.2d at 901 (*quoting Makar v. Health Care Corp.*, 872 F.2d 80, 83 (4th Cir.1989)); *see also McGraw v. Prudential Insurance Company of America*, 1998 WL 96849, *11 (10th Cir. 1998) (noting that futility exception is limited to those instances where resort to administrative remedies would be "clearly useless"); *DeMatte v. Brotherhood of Industrial Workers' Health and Welfare Fund*, 1996 WL 764540, *2–4 (M.D.Fla.1996) (citing *Springer* and noting that "[a] plaintiff must make a clear and positive showing of futility before a court will suspend the exhaustion requirement").

■ The record before the court shows that Stephenson was found to be disabled by an ALJ under the Social Security Act's definition of disability. Provident then began paying Stephenson's benefits. Pursuant to the recommendation of Stephenson's doctor and pursuant to Provident's ongoing monitoring of Stephenson's condition, Provident requested that Stephenson undergo an FCE. The objective of the evaluation was "to determine if Ms. Stephenson is capable of performing ANY OCCUPATION within her education, experience and physical capacities." (Def.'s Evid., Ex. C (emphasis in original).) Stephenson refused to consent to an FCE on two grounds: (1) her reading of Provident's definition of disability did not allow for an FCE; and (2) Provident's definition of disability was substantially similar to the definition utilized by the ALJ in making Stephenson's SSA disability determination. (*Id.*, Ex. D.) Provident then informed Stephenson that it believed it was entitled to require her physical examination under the terms of her plan and that if she continued to refuse, her

(Def.'s Evid., Ex. I.)

benefits would be terminated. It also invited her to submit any other information she thought relevant to the disposition of her case. When Stephenson failed to respond, Provident terminated her benefits and advised her that she had 60 days to appeal. Stephenson did not respond to Provident's termination letter until approximately four and one-half months after its receipt. Provident refused to consider this out of time submission.

Regardless of the grounds Stephenson asserts for her failure to pursue and exhaust administrative remedies, it is clear that she did fail to do so. Once Stephenson refused to submit to an FCE, Provident notified her that she had approximately one month to do so or her benefits would be terminated. Almost one month after that deadline, Provident terminated her benefits and clearly notified her that she had sixty days to appeal. Provident also clearly outlined the steps necessary for her to appeal. She failed to abide by the sixty day requirement. On these facts alone, the court finds that Stephenson failed to exhaust her administrative remedies; she had the opportunity to pursue an appeal and chose not to.

The court rejects Stephenson's argument that it would have been futile for her to pursue her administrative remedies because Provident had "already made up its corporate mind to ignore its own definition of disability and to cast about for every conceivable, illogical, unreasonable reason to attempt to justify its decision to deny Plaintiff her disability benefits." (Pl.'s Resp. at 4, ¶ 10.) There is simply no evidence in the record to support this contention. Further, as the Ninth Circuit noted in *Diaz v. United Agricultural Employee Welfare Benefit Plan*, 50 F.3d 1478 (9th Cir.1995), this type of argument:

> is really circular, for [Provident's] current denial is pegged entirely to [Stephenson's] failure to have pursued the administrative route. Moreover, such bare assertions of futility are insufficient to bring a claim within the futility exception, which is designed to avoid the need to pursue an administrative remedy that is demonstrably doomed to fail.

*Id.* at 1485–86 (citations omitted). Despite Plaintiff's contention that the pursuance of an appeal would have been futile, the court agrees with Provident's observation that "[Stephenson]'s own delinquency in pursuing an internal appeal prevented the possibility of an administrative look at the merits, and the record contains nothing to suggest that the administrators would have reached a preconceived result in reviewing her claim." (Def.'s Reply at 3); *see also Springer*, 908 F.2d at 901 (noting that a claimant's disagreement with the basis of a decision does not excuse failure to exhaust).

■ Although necessarily a case-specific inquiry, futility may be established by showing the prevention of an administrative look at the merits, *Diaz*, 50 F.3d at 1486, the denial of meaningful access to administrative review procedures, *Curry*, 891 F.2d at 846–47, or other arbitrary, capricious or aggravating circumstances. Plaintiff does not allege, nor does the record disclose any such factors. The purpose of requiring the exhaustion of administrative remedies is the prevention of what Stephenson has attempted in this action; namely, the bypass of the appeal procedure provided for in her Plan. Although the court is sympathetic to the Plaintiff's predicament, it is, ultimately, one of her own making. Based on the foregoing, the court finds that Provident's Motion For Summary Judgment is due to be granted.

## III. CONCLUSION AND ORDER

For the reasons set forth above, it is CONSIDERED and ORDERED that Defendant's Motion For Summary Judgment be and the same is hereby GRANTED.