**HCA HEALTH SERVICES OF GEORGIA, INC., d/b/a Parkway Medical Center as assignee of Steven J. Denton, Plaintiff,**

v.

**EMPLOYERS HEALTH INSURANCE COMPANY, Defendant.**

No. Civ.A. 1:96–cv–3333–CAM.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 28, 1998.

Robert Jason D'Cruz, Hunter, Maclean, Exley & Dunn, Atlanta, GA, Andrew Roy Bickwit, Maxine, Woods, Tate, Law Offices of Ross Gelfand, Norcross, GA, for Plaintiff.

Elizabeth Johnson Bondurant, Carter & Ansley, Atlanta, GA, David Marlow Atkinson, Magill & Atkinson, Atlanta, GA, for Defendant.

## *ORDER*

MOYE, District Judge.

Plaintiff, HCA Health Services of Georgia, Inc., d/b/a Parkway Medical Center (HCA or Parkway), filed this case seeking to recover from Defendant, Employers Health Insurance Company (EHI), benefits allegedly owed for services provided to Steven Denton, who is insured by EHI. The case is before the Court on cross motions for summary judgment. For the reasons stated herein, the Court GRANTS EHI's motion as to HCA's state law claims and GRANTS HCA's motion as to its ERISA claims.

### BACKGROUND

Steven J. Denton is employed by Software Builders, Inc., which sponsors an employee welfare benefit plan for its employees. As part of this plan, Software Builders contracted with EHI for a group health insurance policy, providing medical expense benefits to eligible employees. The group health insurance policy was issued effective April 1, 1995. Denton enrolled in the EHI group health insurance policy effective April 1, 1995.

Software Builders elected a preferred provider organization (PPO) policy for its employers through the EHI group health insurance policy. EHI negotiated reduced fees with the members of its preferred provider network, Private Health Care Systems (PHCS). EHI agreed to pay 90% of the negotiated fees for services provided by any member of PHCS, but only 80% of the fees for services provided by any provider who was not a member of PHCS. Certain other benefits not directly relevant to this case were also associated with the use of preferred providers. Because of Software Builders' election, Denton was covered by the PPO provisions of the policy.

In December 1995, Denton chose to have outpatient surgery performed at Parkway. As required by his group health insurance, Denton obtained, completed, and submitted a pre-certification form. Parkway is not part of PHCS, the EHI preferred provider organization. Denton's group health insurance policy therefore covered 80% of the expenses incurred, and Denton was responsible for the remaining 20%. Denton executed an Assignment of Insurance Benefits authorizing EHI to pay his insurance benefits directly to HCA.

Although Parkway is not a member of PHCS, it is a member of MedView Services, Inc. (MedView), a different preferred provider organization. Parkway has been a member of MedView since March 1994. As part of its agreement with MedView, HCA agreed "to accept 75% of usual and customary fees" "for covered outpatient services."

In April 1994, MedView executed a Letter of Agreement with Health Strategies, Inc. (HSI)[1] to "lease" MedView's network of providers to HSI. The agreement specifically indicated HSI's "desire[ ] to obtain the ad-

---

1. Health Strategies, Inc., later changed its name to Healthcare Synergies, Inc. The abbreviation "HSI" will be used throughout to refer to the corporate entity under either name.

vantage of the reduced fees available through the preferred provider network by 'leasing' MedView's network of providers." Within the agreement, " '[l]easing' means that [HSI] will perform all repricing functions to adjust fees from charges to contracted rates." MedView agreed to "[c]ontract with health care providers for the provision of health care services at a reduced cost" and to "[p]rovide [HSI] with listings of health care providers and their contracted rates for [HSI] to use in repricing bills for their clients." HSI agreed, among other things, to "[e]xpeditiously reprice fees for provider services to amounts contracted by MedView," to use MedView's name on Explanation of Benefits (EOB) forms, to pay MedView a fee, and to "[u]tilize MedView's network exclusively in the [agreed upon geographical area] for a given client of Health Strategies, Inc."

In July 1995, HSI entered a "shared savings" agreement with EHI whereby HSI agreed to make available to EHI savings it had negotiated with various healthcare providers in exchange for which EHI agreed to expedite its payments to the providers. EHI agreed to "pay HSI a fee equal to twenty percent (20%) of the 'reduction' obtained." As a result of the agreement, HSI provided EHI with a list of participating providers which included Parkway. EHI's agreement with HSI included only healthcare facilities and providers who were not part of EHI's preferred provider network, PHCS.

HCA sent EHI a bill in the amount of $3,108.00 for services performed for and medical and surgical supplies provided to Denton. Because Parkway was on the list of participating providers supplied to EHI by HSI, EHI forwarded the bill to HSI for repricing. HSI recalculated the bill, applying a twenty-five percent (25%) discount ($770.00) pursuant to the terms of the agreement between HCA and MedView. Deducting $770.00 from the original billing amount of $3,108.00, HSI informed EHI that the HCA discounted billing amount was $2,331.00. EHI applied the co-insurance rate of 80%, pursuant to Denton's group health insurance policy terms for services by a non-preferred provider, and, in January 1996, paid HCA $1,864.80. Along with the remittance, EHI sent HCA an explanation of benefits indicating that the discount was agreed to in a preferred provider contract and that the "payment is based on a PPO contract with the HSI network, MedView Services, Inc. or their affiliates."

In 1996, HCA contracted with Network Analysis, Inc., to review claim payments in an attempt to detect and eliminate "secret PPO's." After an initial review by HCA, claims to which questionable reductions or discounts had been applied were submitted to Network Analysis to verify the validity of the reduction or discount. Network Analysis was paid a percentage of the reductions or discounts it identified as invalid. In verifying the reductions and discounts, Network Analysis contacted the employer of the insured to determine what, if any, PPO the insured belonged to. Network Analysis also contacted the insurer to determine the source of the reduction or discount taken. If the source of the reduction or discount was different from the PPO to which the insured belonged, Network Analysis notified HCA that the reduction or discount appeared to be invalid. Unless HCA notified Network Analysis that the reduction or discount was legitimately based on a PPO contract, Network Analysis turned the account over to Ross Gelfand, collection attorney for HCA, for collection action.

In August 1996, Gelfand sent three virtually identical letters to EHI, objecting to the twenty-five percent discount taken on Denton's account. Included in the letters was the statement, "Our client honors PPO discounts only in those cases where the insured belongs to the named network and was both directed and given incentive(s) by the network in the selection of their facility." The letter also included a demand for $770.00, the amount HCA contends was erroneously taken as a discount.

In response, EHI sent a letter to Gelfand explaining that EHI believed the discount was properly taken pursuant to the contract with HSI but that the case would be forwarded to HSI for confirmation.

HCA filed this action on November 8, 1996, in the State Court of Fulton County. EHI removed the case to this court based on

federal question jurisdiction over a dispute which "arises from" and is "related to" an employee benefit plan governed by ERISA. EHI filed a motion to dismiss for failure to state a claim because HCA had included only state law causes of action. HCA filed a motion to amend the complaint to add an ERISA cause of action. By order dated June 19, 1997, this Court granted the motion to amend and denied the motion to dismiss. Both parties have now filed motions seeking summary judgment.

## LEGAL ANALYSIS

### I. Summary Judgment

Courts should grant summary judgment when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Both parties have filed motions for summary judgment. They do not dispute the material facts but disagree as to the legal significance of the facts.

### II. Preemption

EHI contends all of HCA's state law claims are preempted by ERISA. HCA failed to respond to this contention, but asserted instead its claim for benefits pursuant to ERISA.

"The federal Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. § 1001 et seq. (ERISA), comprehensively regulates employee pension and welfare plans." Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 732, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985). ERISA "contain[s] a broad pre-emption provision declaring that the statute shall 'supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan.'" Id. (quoting 29 U.S.C. § 1144(a)).

HCA initially based its claim only on state law causes of action including breach of contract, quantum meruit, open account, and stated account, but later amended the complaint to add a claim for benefits under ERISA. The Court finds that this case is an action to recover benefits allegedly due pursuant to an ERISA employee benefit plan.

HCA's state law causes of action are therefore preempted by ERISA.

### III. Standing

■ EHI asserts that HCA does not have standing to bring this suit. It contends that Denton does not have standing to bring the suit because he has received all the benefits due him under the benefit plan and that HCA, as assignee of Denton, has only the rights Denton has.

HCA contends that, as assignee of Denton, it has the right to sue to recover benefits due on Denton's behalf.

"[N]either § 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights from an entity listed in that subsection." Cagle v. Bruner, 112 F.3d 1510, 1515 (11th Cir.1997). "[A] provider-assignee[ ] has derivative standing to sue [an ERISA benefit plan] under 29 U.S.C. § 1132(a)." Id. at 1516.

Denton authorized the payment of insurance benefits directly to HCA. As Denton's assignee, HCA has standing to bring an action for benefits allegedly due pursuant to the ERISA plan. Of course, whether additional amounts are due to HCA pursuant to Denton's group insurance policy is the issue to be decided by this action.

### IV. Exhaustion

■ EHI contends it is entitled to summary judgment because HCA failed to exhaust administrative remedies prior to bringing this action. EHI acknowledges that it received three letters from an attorney retained by HCA and that each letter stated that a discount of $777.00 had been taken in error on Denton's account. EHI contends the letters were insufficient to serve as notice of appeal because they did not indicate that Denton had assigned his rights to HCA or that demand was being made as assignee of Denton. EHI further contends that the letters did not request a review of the EHI decision.

HCA contends it complied with all exhaustion requirements before filing this lawsuit. It further contends that the letters sent to EHI by its attorney were sufficient to satisfy

the administrative appeals procedures. HCA contends that the responsive letter from EHI, indicating that it believed the discount was correct but that it had forwarded the letters "to HSI for eligibility confirmation," is evidence that EHI started the appeals process. HCA contends that EHI's failure to respond further constituted a denial of its appeal.

"It is well-established law in this Circuit that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." *Springer v. Wal–Mart Associates' Group Health Plan,* 908 F.2d 897, 899 (11th Cir. 1990). *See also, Variety Children's Hosp., Inc., v. Century Medical Health Plan. Inc.,* 57 F.3d 1040 (11th Cir.1995) ("We have repeatedly held that plaintiffs must exhaust their administrative remedies under a covered benefits plan prior to bringing an ERISA claim in federal court."). "Exceptions to the exhaustion requirement do exist, however, most notably when resort to the administrative route is futile or the remedy inadequate." *Springer,* 908 F.2d at 899 (internal quotation marks omitted). "[T]he decision whether to apply the exhaustion requirement is committed to the district court's sound discretion." *Id. See also, Curry v. Contract Fabricators Inc. Profit Sharing Plan,* 891 F.2d 842, 846 (11th Cir.1990).

In remitting its payment to HCA, EHI provided patient name, claim number, insured name, insured identification number, and date of service. The letters sent to EHI by the attorneys for HCA included the insured name, claim number, patient (insured identification) number, and date of service. The letters thus included all identifying information included by EHI in making its payment to HCA. The letters sent to EHI stated the amount at issue, stated that HCA believed the discount was taken in error, and asked that the erroneous discount be remitted. In response, EHI sent HCA a letter stating that it believed it was entitled to the discount pursuant to its contract with HSI, but that it had forwarded HCA's letters to HSI for confirmation.

HCA's letters were sufficient to, and in fact did, initiate administrative review procedures. EHI's failure to respond further was an implicit denial of the appeal. HCA exhausted its available administrative remedies before filing this suit.

V. *Validity of Plan Administrator's Decision*

In its motion for summary judgment, HCA contends the Court must apply a *de novo* standard of review to EHI's decision as EHI was not interpreting an employee benefit plan document, but was applying the terms of a contract between two parties wholly unrelated to the benefit plan. In response to EHI's motion for summary judgment, HCA contends, in the alternative, that, should the Court determine that EHI was interpreting an employee benefit plan document, EHI's interpretation is due little deference because EHI was acting under a conflict of interest in that it is an insurance company that pays benefits out of the company's assets. To be afforded any deference, HCA contends, EHI must show that its interpretation of the plan was not tainted by self-interest. HCA contends EHI may make this showing only by showing that its interpretation operated exclusively in the interests of the plan participants and beneficiaries.

EHI contends that its decision is entitled to deference under the arbitrary and capricious standard of review because the plan documents give it discretion to interpret the plan and to determine benefits. It further contends that use of heightened review is not appropriate because its interpretation was "calculated to maximize benefits to participants in a cost-effective manner." EHI contends, however, that it is entitled to summary judgment under any standard of review because the decision was legally correct.

ERISA does not specify the standard of review courts should use in reviewing the benefit eligibility determinations of an ERISA plan administrator. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). The Supreme Court, however, held that a challenge to a denial of benefits "is to be reviewed under a *de novo* standard unless the

benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 110, 109 S.Ct. 948. Where the plan "gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id.*

Consistent with the holdings of the Supreme Court, the Eleventh Circuit "has adopted the following standards for reviewing administrators' plan interpretations: (1) *de novo* where the plan does not grant the administrator discretion, (2) arbitrary and capricious when the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest." *Buckley v. Metropolitan Life,* 115 F.3d 936, 939 (11th Cir.1997). "Because an insurance company pays out to beneficiaries from its own assets rather than the assets of a trust, its fiduciary role lies in perpetual conflict with its profit-making role as a business." *Id.* (quoting *Brown v. Blue Cross & Blue Shield of Alabama, Inc.,* 898 F.2d 1556 (1990), *cert. denied,* 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991)). Generally, therefore "the heightened arbitrary and capricious standard must be used when the plan (is) administered by an insurance company which (pays) benefits out of its own assets." *Id.* An administrator can "purge the taint of self-interest" by showing that its interpretation benefits "the class of all participants and beneficiaries." *Brown,* 898 F.2d at 1567, 1568.

■ In the case at bar, the contract between EHI and *Software Builders* states:

> With respect to paying claims for benefits under this Policy, WE as administrator for claims determinations and as ERISA claims review fiduciary ... shall have discretionary authority to 1) interpret policy provisions, 2) make decisions regarding eligibility for coverage and benefits, and 3) resolve factual questions relating to coverage and benefits.

Under the terms of the policy, "WE" refers to EHI, the insurer. Because the plan documents give EHI discretion both to interpret the plan and to make factual decisions, the

Court must use the arbitrary and capricious standard of review. As EHI is an insurance company paying benefits from its assets rather than from a trust fund, the heightened standard of review must apply unless EHI can show either that its interpretation of the plan was not wrong, from a *de novo* review, or that its interpretation worked to the benefit of all plan participants.

"The first step in the application of the arbitrary and capricious standard ... is to determine—*from the perspective of de novo review*—whether the fiduciary's interpretation of the disputed plan provision is legally correct or legally wrong." *Stvartak v. Eastman Kodak Co.,* 945 F.Supp. 1532, 1535 (M.D.Fla.1996) (emphasis in original) (citing *Lee v. Blue Cross,* 10 F.3d 1547, 1550 (11th Cir.1994); *Brown,* 898 F.2d at 1567 n. 12), *aff'd,* 144 F.3d 54 (11th Cir.1998). "In determining whether the fiduciary's interpretation is legally correct, this Court must determine whether [the claimant] has proposed a sound interpretation of the plan to rival [the administrator's] interpretation." *Id.* (citing *Lee,* 10 F.3d at 1550; *Brown,* 898 F.2d at 1570).

■ EHI contends that its interpretation of the term "expenses incurred" to permit the application of discounts for expedited payment is legally correct within the meaning of the plan. HCA contends that EHI's interpretation is wrong because the shared savings program is in direct conflict with the preferred provider provisions of the plan and therefore violates the requirements of ERISA. HCA further contends that, as the only terms of the contract that even suggest any discounted fees are in the PPO provisions, and as Parkway is not part of the PHCS network of providers specified in the contract, EHI may not apply a discount to Parkway's charges.

Within the ERISA group insurance policy issued by EHI to Denton and other employees of Software Builders, benefits are payable for "covered expenses." In general, after a calendar year deductible is paid by the participant, EHI agrees to pay 90% of all covered expenses incurred for preferred provider services and 80% of all covered expenses incurred for non-preferred provider

services. After annual out-of-pocket limits are reached, EHI agrees to pay 100% of all covered expenses incurred by either preferred provider services or non-preferred provider services.

"Covered expense" is defined by the policy as "A Medically Necessary expense; For the benefits stated in this Certificate; and An Expense Incurred when You are insured for that benefit under this Policy on the date that the Service is rendered." "Expense Incurred" is defined as "the Maximum Allowable Fee charged for Services which are Medically Necessary to treat the condition." "Maximum Allowable Fee" is defined as

> the lesser of: 1. The fee most often charged in the geographical area where the Service was performed; 2. The fee most often charged by the provider; 3. The fee which is recognized as reasonable by a prudent person; 4. The fee determined by comparing charges for similar Services to a national data base adjusted to the geographical area where the Services or procedures were performed; or 5. The fee determined by using a national RELATIVE VALUE SCALE.

The policy specifically does not pay "Charges in excess of the Maximum Allowable Fee for the Service."

Under the terms of EHI's contract with Software Builders, "expenses incurred" cannot validly be interpreted to mean a charge reduced or discounted through a shared savings program. First, such a discounted charge does not meet any of the definitions of "Maximum Allowable Fee" included in the contract. Second, the only terms of the contract which speak to negotiated fees are contained within the PPO provisions, and the shared savings discount is in conflict with those provisions. Under the PPO provisions, an insured, in exchange for choosing a provider with whom EHI has negotiated fees, pays a reduced percentage of that fee. With the shared savings discount, however, EHI has negotiated a "fee for medical Services" but still requires the insured to pay the full 20% co-payment provided in the contract for non-negotiated fees. Additionally, whereas EHI provides the insured a list of PPO providers so that the insured can make a rea-

soned choice, the insured never knows who the shared savings providers are and is unable to make a reasoned choice to use a shared savings provider rather than a provider with whom there are no negotiated savings.

The Court finds that EHI's interpretation of "expense incurred" to mean a fee discounted through a shared savings program for expedited payment and unrelated to a PPO is legally incorrect from the perspective of *de novo* review. Further, the Court finds that HCA's interpretation that fees may be discounted only through the PPO provisions is legally sound.

"If a fiduciary's interpretation is wrong, the Court then evaluates the self-interest of the fiduciary." *Stvartak*, 945 F.Supp. at 1535 (citing *Brown*, 898 F.2d at 1567 n. 12). "If a plan participant demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations, the burden shifts to the fiduciary to prove that its interpretation of the plan was not tainted by self-interest." *Id.* (citing *Brown*, 898 F.2d at 1566). "[A] wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary or beneficiaries unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries." *Id.* (quoting *Godfrey v. BellSouth Telecommunications, Inc.*, 89 F.3d 755, 758 (11th Cir.1996); *Brown*, 898 F.2d at 1566–67, *Lee*, 10 F.3d at 1550).

■ EHI contends its interpretation is reasonable and benefits all plan participants in that it lowers the co-payments they must make. HCA contends EHI's interpretation harms Denton in this case because he is liable for all amounts charged by Parkway that are not paid by his insurance. HCA further contends EHI's interpretation is at least in part motivated out of a desire to save itself money.

EHI has an inherent conflict of interest in that it is an insurance company paying benefits out of its own assets. Although EHI is correct that the shared savings program as

now administered lowers co-payments for beneficiaries who inadvertently choose a provider with whom EHI has a shared savings agreement, the shared savings program is of no benefit to participants who chose a PPO provider or to participants who unknowingly choose a provider who is not part of a shared savings program. Moreover, applying discounts outside of the PPO provisions benefits EHI at the expense of the beneficiaries. For example, if the actual charge for a medical service is $100, without a discount the beneficiary would be responsible for $20 (20% of $100) and EHI, for $80 (80% of $100). If a shared savings of 25% had been negotiated for a payable amount of $75, under EHI's interpretation of the policy, the beneficiary would be responsible for $15 (20% of $75) and EHI, for $60 (80% of $75). Had the same discount been applied under the PPO provisions, however, the beneficiary would be responsible for only $7.50 (10% of $75) and EHI, for $67.50 (90% of $75). Thus, by applying the discount outside of the PPO provisions, EHI benefits at the expense of the affected beneficiary. Finally, under the circumstances presented in this case, where a provider has not negotiated directly with the insurance company and denies that the insurance company is entitled to a discount, the beneficiary could be held liable for the full amount of any discount incorrectly taken, even if the insurance company, based on the information before it at the time it decided to take the discount, correctly believed it was entitled to the discount. *See, Lee,* 10 F.3d at 1550 ("Application of the arbitrary and capricious standard requires us to look only to the facts known to the administrator at the time the decision was made.").

Because EHI's interpretation of the insurance policy advances EHI's self-interest at the expense of policy beneficiaries, the Court finds that EHI's interpretation is arbitrary and capricious.

## CONCLUSION

EHI is entitled to summary judgment on HCA's state law claims because they are preempted by ERISA.

HCA is entitled to summary judgment on its ERISA claim because EHI's interpretation of the Software Builders' group health insurance policy is arbitrary and capricious in that it advances EHI's self-interest over the interests of the policy beneficiaries.

The Court therefore GRANTS EHI's motion for summary judgment as to HCA's state law claims [27–1] and GRANTS HCA's motion as to its ERISA claims [26–1].

**Clerk of Court is** directed to enter judgment for HCA on its ERISA claims in the amount of $770.00 and for EHI on HCA's state law claims.