Susan DUCKETT, Plaintiff,

v.

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, Defendant.**

Civil Action No. 98–D–1123–N.

United States District Court,
M.D. Alabama,
Northern Division.

Oct. 31, 2000.

Larry A. Goldston, Jr., Rhon E. Jones, Thomas J. Methvin, Beasley, Allen, Crow, Methvin, Portis & MII, Montgomery, AL, for plaintiff.

Leslie McCafferty Allen, Leigh Anne Hodge, J. Beth Moscarelli, Balch & Bingham, Montgomery, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Blue Cross and Blue Shield of Alabama's ("Blue Cross" or "Defendant") Motion For Summary Judgment together with a supporting Brief, which was filed on July 25, 2000. On August 9, 2000, Plaintiff Susan Duckett ("Plaintiff") filed a Response, and Defendant filed a Reply on August 16, 2000. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion For Summary Judgment is due to be granted.

## I. JURISDICTION AND VENUE

The court exercises subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court construes the evidence and factual inferences in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). As the Supreme Court has explained:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when pre-

paring or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." FED.R.CIV.P. 56(e); *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348; *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita*, 475 U.S. at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND

This is an appeal under ERISA of Blue Cross' denial of health care benefits to Plaintiff's dependent son. The denial was premised upon Blue Cross' determination that Plaintiff's dependent son received treatment for a pre-existing condition during the 270 day waiting period. The court will set out the relevant provisions of Plaintiff's health plan, Plaintiff's son's treatment history, and the circumstances surrounding the denial of benefits.

### A. Plaintiff's Health Plan

Susan Duckett is a participant in a health benefits plan (the "Baptist Plan") sponsored by her employer, Baptist Health Services, Inc. ("Baptist Health"). (Resp. at 2.) Plaintiff's son, Daniel, is a beneficiary under the Baptist Plan. (*Id.* at 3.)

Baptist Health provides medical, surgical, and other health benefits to its employees and their dependents though a group health benefits contract between Blue Cross and Baptist Health (the "BHS Contract"). (Mot. at 2; McIntyre's Decl. ¶ 2.) Blue Cross interprets the terms of the Baptist Plan and determines whether the claims are payable; hence, Blue Cross is a fiduciary to the Baptist Plan pursuant to 29 U.S.C. § 1002(21)(A).[1] (*Id.*) According to Blue Cross, the Baptist Plan is self-funded, which means that the cost of claims is ultimately paid from the assets of the employer, not Blue Cross. In other words, Blue Cross is not the insurer. (*Id.*)

Plaintiff's family coverage under the Baptist Plan began on September 1, 1996. (Pl.'s Ex. 4.) Among other things, the insurance coverage afforded to Plaintiff and her family provides for a 270 day waiting period before pre-exiting conditions will be covered under the Baptist Plan. Blue Cross interprets the pre-existing condition exclusion to exclude coverage for services rendered to treat a condition that existed on the effective date of coverage whether known or unknown, or for which the participant saw a physician and/or received care, prescription drugs, services or supplies in the year prior to the effective date of coverage under the Baptist Plan, unless the participant has completed the 270 day

1. The statute provides:
Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.
29 U.S.C. § 1002(21)(A).

waiting period. (Mot. at 3; McIntyre's Decl. ¶ 4.)

### B. Daniel's Treatment History

In December 1995, Daniel was diagnosed with ulcerative colitis. (Mot. at 3; McIntyre's Decl. at 3, n. 2.) In February 1996, Daniel visited Dr. Robert Moon due to his complaints of "weakness and anemia." (McIntyre's Decl. ¶ 5.) According to the medical records, Dr. Moon's impression was that Daniel's condition was "Marked Anemia" and "Ulcerative Colitis." (Id.; Pl.'s Ex. 6.)

In June 1996, Dr. Moon referred Daniel to Dr. Ralph T. Lyerly, Jr. for "severe refractory colitis." (McIntyre's Decl. ¶ 6.) After his examination of Daniel, Dr. Lyerly stated that

> [b]ased on his clinical course and appearance of this sigmoid on exam today, I am convinced that his colitis is ultimately refractory to medical therapy, and I am seriously concerned about the risk of adenocarcinoma of the colon developing at. an early point due to the sever proliferative changes in the colon seen at this time.

(Id.)

Subsequently, Dr. Moon referred Daniel to Dr. Phillip A. Dean, an assistant professor of surgery at the University of Alabama School of Medicine. (Id. at ¶ 7.) Dr. Dean performed a surgical procedure called "a proctocolectomy with ileoanal J-pouch reconstruction" whereby Daniel's large intestine was removed. (Resp. at 3; Pl.'s Ex. 7.) A medical report indicated that Daniel's small intestine "was completely normal with no evidence of disease and there were no other abnormalities found." (Id.)

In August 1996, Daniel made a follow-up visit to Dr. Dean who noted that he was recovering extremely well and had no further symptoms other than "approximately ten bowel movements a day with 1–2 at night." (McIntyre's Decl. ¶ 11.) In October 1996, after Plaintiff's coverage began,

Daniel made another follow-up visit to Dr. Dean.[2] (Id. at ¶ 12.) Dr. Dean indicated that, although he was recovering from the surgery, Daniel was still "having approximately six bowel movements a day ...." (Id.) Dr. Dean requested Daniel follow up with another visit approximately eight weeks thereafter. (Id.)

On December 16, 1996, Daniel returned to Dr. Dean with complaints of "leakage of several drops of stool." (Id. at ¶ 13.) In March 1997, Daniel began developing fevers, experiencing an increased number of bowel movements, and began having pain in his rectal area. (Id. at ¶ 14.) On April 30, 1997, Daniel was admitted to the hospital and treated for his bowel disease for the next three weeks. (Id. at 15.)

### C. The Claim

According to Plaintiff, when Daniel was admitted to the hospital in April of 1997, he was initially diagnosed as having "ulcerative colitis." Subsequent exams, however, resulted in a diagnosis of Crohn's disease. (Resp. at 4.) The first claim submitted to Blue Cross for Daniel's hospitalization and physician bills for the treatment rendered in March and April 1997 contained "diagnostic codes reflecting ulcerative colitis, regional enteritis unspecified, regional enteritis small intestine or esophageal ulcers." (McIntyre's Decl. ¶ 16.) On June 19, 1997, Blue Cross denied this initial claim as pre-exiting. (Id.)

After Blue Cross' initial denial, the claim was resubmitted with a diagnostic code for Crohn's disease. (Id. at ¶ 17.) Blue Cross ordered Daniel's medical records from Dr. William Penn White. (Id.) Based on its review of the records, Blue Cross initially determined that the claim was due to be denied in light of the pre-existing condition provision. (Id.) However, Blue Cross contends that, before a final decision was made, Daniel's file was submitted to Blue Cross' Associate Medical Director William Hansford for a determination as to wheth-

---

**2.** Blue Cross notes that Plaintiff submitted a claim for benefits for this follow-up visit and it was determined by Blue Cross to be a pre-existing condition. (Mot. at 5.)

er Daniel's treatment after the effective date was for a pre-existing condition. (*Id.*) Based on a review of the medical evidence submitted by Plaintiff in support of her claim, Dr. Hansford determined that Daniel's treatment was related to his diagnosis of ulcerative colitis and was, therefore, treatment for a pre-existing condition. (*Id.*) Blue Cross denied the claim. (*Id.;* Resp. at 4.)

After being informed of the denial, Plaintiff's husband requested a reconsideration of Dr. Hansford's decision by way of a facsimile transmission to Blue Cross. (McIntyre's Decl. ¶ 18.) Plaintiff's husband attached two letters in support of his appeal. (*Id.* at ¶ 19.) First, Plaintiff's husband attached a letter from Dr. Louisa M. Tolentino which reads as follows:

Mr. [Daniel] Duckett was diagnosed by tissue biopsy to have Ulcerative Colitis in February of 1996 for which he subsequently underwent a proctocolectomy with ileoanal pouch reconstruction. He has been doing well since then.

In March of 1997, he developed a fever, weight loss, and hemotochezia. He was referred [to] U.A.B. Medical Center and diagnosised [sic] with Crohn's Disease. In this case the diagnosis of Crohn's Disease should not be categorized as pre-existing.

(Def.'s Ex. A.) Second, Plaintiff's husband attached a letter from Dr. William Penn White which provides:

Daniel Duckett is a patient of mine I've followed for over two years. Initially, he felt to have very severe ulcerative pan colitis which was unresponsive to all medications, including steroids, mesalamine, and cyclosporine A. This did require a total colectomy. Unfortunately, the patient had a recurrence of inflammatory bowel disease, which on further evaluation turned out to be Crohn's disease of the small intestine and ileopouch. Thus, he is not suffering from the same disorder which required a total colectomy. He is undergoing treatment for Crohn's disease, including disease from multiple peri-anal fistuale and in-

flamation. Please take this into account concerning his insurance coverage.

(Def.'s Ex. A.)

Based upon the newly submitted letters and a second review of all the medical evidence submitted by Plaintiff, an allegedly independent reviewer, Dr. Paul Salter, determined that Daniel's Crohn's disease was pre-existing. (McIntyre's Decl. ¶ 20.) Dr. Salter's determination was based upon a 1995 pathologist report which indicated that a biopsy of Daniel's colon "raise[d] the possibility of Crohn's disease" (Mot. at 7; Pl.'s Ex. 10.), and Dr. White's letter referring to multiple peri-anal fistuale and inflamation, which is a complication of Crohn's disease. (McIntyre's Decl. ¶ 20.) On October 6, 1997, Blue Cross informed Plaintiff of its intention to uphold its prior denial based upon its determination that Daniel's Crohn's disease was a pre-existing condition. (*Id.* at ¶ 21.)

On December 1, 1997, Blue Cross received an appeal of the second affirmance of the denial of Plaintiff's claim. (Resp. at 4; McIntyre's Decl. ¶ 22.) According to Blue Cross, a third independent review was conducted on the medical evidence by Dr. Charles Soloman, an internist. (McIntyre's Decl. ¶ 23.) On February 18, 1998, Dr. Solomon determined that the claim was correctly denied based on the fact that Daniel's history of inflammatory bowel disease indicated that his Crohn's disease began with his earlier diagnosis of ulcerative colitis. (*Id.* at ¶ 24.) Plaintiff was subsequently informed of Blue Cross' decision to uphold the initial denial. (*Id.*)

D. *The Lawsuit*

On September 10, 1998, Plaintiff filed this action in the Circuit Court for Montgomery, Alabama, seeking to recover compensatory and punitive damages against Blue Cross under state common-law theories. (Compl.) Blue Cross removed the action to this court on the basis of ERISA preemption and Plaintiff's state law claims were subsequently dismissed. (Order, October 20, 1999.) Plaintiff filed an Amend-

ed Complaint on November 4, 1999. (Am. Compl.) Plaintiff's Amended Complaint contains two counts. (*Id.*) The first count is for equitable relief and seeks a declaratory judgment against Blue Cross declaring that, under the Baptist Plan, Plaintiff is covered for Daniel's treatment of Crohn's disease. The second count asserts a claim for payment of benefits. Blue Cross moves for summary judgment on both counts.

## IV. DISCUSSION

### A. *Count One (Declaratory Relief)*

█ In Count One of Plaintiff's Amended Complaint, Plaintiff seeks declaratory relief stating that Plaintiff and her family "are and have been continuously covered by the benefits plan, since September, 1996." (Am.Compl.¶ 9.) Further, in her prayer for relief, Plaintiff prays for a declaratory judgment holding "that Plaintiff has been continuously entitled to benefits since September 1996, is now entitled to benefits, and will be entitled to benefits until 1 month after termination of employment, under Baptist [H]ealth Insurance Plan administered by Blue Cross and Blue Shield." (*Id.* at 3.) Blue Cross contends that only Baptist Health can decide whether Plaintiff is eligible for coverage under the Baptist Plan. (Mot. at 15.) Moreover, Blue Cross argues that it is not the real party in interest, and thus, Plaintiff's claim for a declaratory judgment is due to be dismissed as a matter of law. Plaintiff argues that her claim relates to benefits— not coverage—and as such Blue Cross is the real party in interest because Blue Cross determines whether Plaintiff is entitled to benefits under the plan. For the following reasons, the court agrees with Plaintiff.

The Eleventh Circuit has held that in an action brought under ERISA, an order compelling certain action must issue against "a party capable of providing the relief requested." *Hunt v. Hawthorne Associates, Inc.,* 119 F.3d 888, 908 (11th Cir. 1997). In *Hunt,* the plaintiff sought an order enjoining payments from an ERISA

plan, and compelling the defendants to make a lump sum payment to him from the plan. *See id* at 900, 904. The Eleventh Circuit reversed the trial court's order that defendants make the lump sum payment, and refused to grant an order enjoining defendants from paying benefits out of the plan. The Court held that "the case law of the circuit demonstrates that an order enjoining the payment of benefits from an ERISA plan must issue against a party capable of providing the relief requested." *Id.* at 908. The Court concluded that the defendant had no authority to issue or deny payment of a lump-sum benefit to a participant. *Id.* Further, the Court reasoned that in order to hold otherwise, as the district court did, would require the court to "implicitly rewrite the plan to give [the defendant] that power." *Id.* at 911. Ultimately, the court reversed the order compelling action which the defendant did not have authority to undertake.

In the instant case, Blue Cross contends that it does not have the authority to provide the declaratory relief requested. (Mot. at 16.) Specifically, Blue Cross contends that, although it is authorized to determine whether a covered person is entitled to specific benefits under the terms and conditions of the plan, Blue Cross is not in a position to determine that Plaintiff is eligible for coverage in the first place. (Reply at 10.) The language of the Baptist Plan provides, in relevant part:

**ELIGIBILITY AND ENROLLMENT**

**Active Employees**

Employees who are employed at least 30 hours per week, meet other eligibility standards of the employer, and are designated as eligible by the employer to Blue Cross, are eligible for coverage . . .

(Reply at 10; Def's Ex. A.) Thus, based on the foregoing, Blue Cross contends that the determination of who is eligible for coverage rests with Plaintiff's employer, Baptist Health, not Blue Cross. In sum, Blue Cross claims that it is not a real

party in interest to Plaintiff's declaratory judgment claim.

Further, Blue Cross argues that Baptist Health is an indispensable party with respect to Plaintiff's equitable claim because only Baptist Health has the capacity to carry out any order that Plaintiff's son is covered by the Baptist Plan. *See* FED. R. CIV. P. 19(b). Because Plaintiff has failed to join an indispensable party, Blue Cross contends that any relief granted by this court would be "hollow relief" and would create the risk of duplicative litigation. (Mot. at 17.)

Plaintiff contends that, despite Blue Cross' characterization of her claim, she does not seek declaratory relief holding that she is entitled to coverage. Instead, Plaintiff argues that she seeks declaratory relief holding she is and continuously has been *entitled to benefits* under the Baptist Plan. (Resp. at 16.) According to Plaintiff, whether an individual is entitled to payment for certain benefits under the plan is within Blue Cross' authority. (*Id.*) Plaintiff relies, in part, on Blue Cross' printed directions for "Filing A Claim and Claim Decision":

> When a claim is submitted properly and received by Blue Cross, it will be processed for determination under all of the contract provisions of whether and in what amount it should be paid or provided as benefits under the plan. Some claims take longer to process than others because they involve consideration of matters such as medical necessity or pre-existing condition determinations requiring medical review, Coordination of Benefits determination requiring communications with other plans, and other factors under the plan. After processing is completed *Blue Cross will determine* and may notify you through a Claims Report that the claim in whole or in part either is being paid and the amount of payment, or is being denied and the reason for denial, or requires additional information before it can be finally determined. If additional information is requested, it must be fur-

nished before the claim can be finally determined.

(Pl.'s Ex. 11) (emphasis supplied). Based on the foregoing language and her contention that her claim for declaratory relief concerns benefits not coverage, Plaintiff argues that Blue Cross is the real party in interest.

In the instant case, the court agrees that Plaintiff's claim concerns whether she is entitled to benefits. Thus, the court finds that Blue Cross is a proper defendant. However, as explained in the next section, Plaintiff is not entitled to the relief requested because Blue Cross' denial of benefits must be upheld. In other words, the court cannot issue a declaratory judgment declaring that Plaintiff has been entitled to benefits since September 1996. Thus, the court finds that Blue Cross is entitled to summary judgment as to this claim.

### B. *Count Two*

In Count Two of her Amended Complaint, Plaintiff challenges Blue Cross' denial of benefits for medical expenses incurred for the treatment of Daniel's Chrohn's disease on the grounds that it was a pre-existing condition. A three-step analysis is required in addressing Plaintiff's claim that Blue Cross wrongly denied her benefits. First, the court must ascertain the applicable standard of review for the denial. Second, assuming that the court's review is not de novo, the court must determine the degree of deference due Blue Cross under the applicable standard. Third, the court, applying the appropriate standard with due deference, must decide the ultimate question of whether the denial was wrongful.

### 1. *The Applicable Standard*

Under ERISA, a denial of benefits is reviewed de novo "unless the benefit plan gives the administrator or the fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115,

109 S.Ct. 948, 103 L.Ed.2d 80 (1989). When the benefit plan gives the administrator discretionary authority to determine eligibility for benefits, then the court must review the denial under the arbitrary and capricious standard. *See Firestone,* 489 U.S. at 115, 109 S.Ct. 948. Thus, if Blue Cross, as claims administrator of the Baptist Plan, is vested with the discretion to determine the terms of the plan, then the court's review is governed by the arbitrary and capricious standard.

■ The Baptist Plan gives Blue Cross the authority to determine eligibility for benefits and to construe the terms of the plan. The plan provides:

> By submitting a claim for benefits you agree any determination Blue Cross makes in deciding claims or administering the contract that are reasonable and not arbitrary and capricious will be final. All such determinations by Blue Cross will be subject to review. For example, if Blue Cross makes a decision that is reasonable and not arbitrary and capricious that surgery is "cosmetic surgery" or that services or supplies were not "medically necessary," its decision will be final.

(Mot. at 9–10; Baptist Plan Document at 30.) The court finds that the aforementioned language is sufficient to establish that Blue Cross has authority to find facts and construe the terms of the Baptist Plan. The Eleventh Circuit has held that nearly identical language confers discretionary authority. *See Lee v. Blue Cross & Blue Shield of Alabama,* 10 F.3d 1547, 1550 (11th Cir.1994); *Jett v. Blue Cross & Blue Shield of Alabama,* 890 F.2d 1137, 1139 (11th Cir.1989).[3] Thus, the court will apply the arbitrary and capricious standard in reviewing Blue Cross' denial of benefits.

**3.** The language of the plan in both *Lee* and *Jett* provided:

> As a condition precedent to coverage, it is agreed that whenever the claims administrator makes reasonable determinations which are not arbitrary and capricious in

### 2. *The Degree of Deference*

■ In applying the arbitrary and capricious standard, the court must take into account whether the administrator is operating under a conflict of interest. *Id.* In other words, review under the arbitrary and capricious standard must be "contextually tailored." *Brown v. Blue Cross & Blue Shield of Alabama,* 898 F.2d 1556, 1563–64 (11th Cir.1990). The degree of deference exercised in reviewing the administrator's decision may range from slight to great, depending upon the dynamics of the decision-making process. *See id.* at 1564. "The disinterested, impartial decisionmaker deserves the greatest deference." *Id.* If an administrator does not have a "significant conflict of interest," then the "denial of benefits should be reversed only if the denial is completely unreasonable." *Id.* (citing *Van Boxel v. Journal Co. Employees' Pension Trust,* 836 F.2d 1048 (7th Cir.1987)). If, however, the administrator has a serious conflict of interest, "the proper deference to give may be slight, even zero; the decision if wrong may be unreasonable." *Id.*

■ Plaintiff contends that Blue Cross has a serious conflict of interest in its administration of claims under the Baptist Plan, and thus, the court should afford Blue Cross slight or zero deference. Specifically, Plaintiff claims that, although Baptist Health ultimately pays the approved claims, it is in Blue Cross' interest to deny all marginal claims for fear that Baptist Health could decide not to reimburse Blue Cross for the payment or file a lawsuit against Blue Cross, or both. (Resp. at 11.) Further, Plaintiff claims that Blue Cross has a non-economic interest in denying all marginal claims because to do so allows it to "remain competitive with other insurance companies that offer

> the administration of the [plan] (including, without limitation, determinations of whether services, care treatment, or supplies are Medically Necessary ...) such determinations shall be final and conclusive. *Lee,* 10 F.3d at 1551; *Jett,* 890 F.2d at 1139.

administrative services." (*Id.* at 12.) According to Plaintiff, if Blue Cross paid every claim filed by a participant of the Baptist Plan, Baptist Health's premiums would rise dramatically and it would in turn stop doing business with Blue Cross and find another company to administer the plan. (*Id.*) Thus, Plaintiff contends that it is in Blue Cross' best interest to deny claims that are close calls or borderline with respect to benefit coverage. *See Lee,* 10 F.3d at 1552.

Blue Cross contends the relevant inquiry, in determining if there is a substantial conflict of interest, is whether the administrator serves solely as an administrator of a self-funded plan or as both administrator and insurer. (Reply at 4.) Blue Cross contends that case law supports this interpretation, and that where the administrator's sole duty is that of an administrator, there is no conflict of interest. Blue Cross contends that, with regard to the Baptist Plan, it is an administrator only. For the following reasons, the court finds that Blue Cross has set forth the appropriate analysis.

In *Brown,* the plan at issue was an insured plan and the Eleventh Circuit applied a heightened arbitrary and capricious standard. 898 F.2d at 1558. In determining the appropriate standard of review, the court noted that "[t]his task reaches the height of difficulty in a case such as the one before us, where an insurance company serves as the decisionmaking fiduciary for benefits that are paid out of the insurance company's assets." *Id.* at 1561. The Court ultimately held that a "strong conflict of interest [exists] when the fiduciary making a discretionary decision is also the insurance company responsible for paying the claims. The inherent conflict between the fiduciary role and the profit-making objective of an insurance company makes a highly deferential standard of review inappropriate." *Id.* at 1562 (citations omitted). Thus, the Court based its decision to afford little to no deference in large part, if not entirely, on the fiduciary's status as an administrator/insurer rather than as just an administrator.

Indeed, the Eleventh Circuit distinguished *Brown* from it prior decision in *Jett, supra,* on the basis of the fiduciary's status. Specifically, the Court held:

> The crucial difference in *Jett,* however, is the lack of any conflicting interest on the part of the insurance company. The plan was self-insured, with the insurance company acting as administrator and receiving full reimbursement from the plan sponsor for covered claims. The insurance company would not suffer any direct, immediate expense as a result of benefit determinations favorable to plan participants. Consequently, the insurance company *qua* plan administrator deserved and was accorded the highest deference in review of its claims denial decision.

*Id.* at 1562.

In this case, as in *Jett,* the Baptist Plan is a self-insured plan with Baptist Health bearing the burden of fully reimbursing Blue Cross. Accordingly, the court finds that, in the instant case, Blue Cross "would not suffer any direct, immediate expense as a result of benefit determinations favorable to plan participants." *Id.*

Additionally, the court disagrees with Plaintiff's assertion that Blue Cross' non-economic motives should dissuade the court from affording Blue Cross the highest deference. Plaintiff, relying upon *Lee, supra,* contends that Blue Cross has a non-economic interest in denying borderline claims. Namely, Plaintiff claims that, if Blue Cross paid every claim, then Baptist Health's premiums would rise dramatically and Baptist Health would find another company to administer the plan. The court finds that the applicable cases do not support Plaintiff's assertion.

In *Brown, supra,* the Eleventh Circuit indicated that it only intended the heightened arbitrary and capricious standard to apply to cases were a substantial conflict of interest exists. 898 F.2d at 1564. By distinguishing *Jett, supra,* the Court indicated that the critical inquiry in determin-

ing whether a substantial conflict existed is whether the plan was self-funded. *Brown,* 898 F.2d at 1562. The Eleventh Circuit clearly intended for there to be situations in which a fiduciary was not conflicted.

Further, the court finds that *Lee, supra,* differs from this case. In *Lee,* the Eleventh Circuit was dealing with an insured plan, not a self-funded plan. 10 F.3d at 1550. In that case, Blue Cross argued that no conflict of interest existed because it was a non-profit organization. *See id.* at 1551–52. The Court ultimately held that, despite the fact Blue Cross was a nonprofit organization, it was not entitled to the highest deference because the plan was not self-insured.

Based on the foregoing, the court finds that Blue Cross was not operating under a substantial conflict of interest. Accordingly, the court finds that Blue Cross is entitled to the highest degree of deference in the review of its denial decision.

### 3. *Blue Cross' Denial*

 Under the arbitrary and capricious standard, an administrator's decision must not be disturbed if reasonable. *See Firestone,* 489 U.S. at 111, 109 S.Ct. 948; *see also Guy v. Southeastern Iron Workers Welfare Fund,* 877 F.2d 37, 38–39 (11th 1989). In applying the arbitrary and capricious standard, the court's role is " 'limited to determining whether [Blue Cross'] interpretation was made rationally and in good faith—not whether it was right.' " [4] *Guy,* 877 F.2d at 39 (quoting *Anderson v. Ciba–Geigy Corp.,* 759 F.2d 1518, 1522 (11th Cir.1985)). Provided there is some reasonable basis for Blue Cross' decision, it must be upheld as not being arbitrary and capricious, even if there is evidence to support a contrary decision. *See Jett,* 890 F.2d at 1139; *see also Blank v. Bethlehem*

*Steel Corp.,* 926 F.2d 1090, 1093 (11th Cir. 1991).

In the instant case, the contract language in question provides in pertinent part

### Waiting Periods for Pre–Existing Conditions

Each member must serve a waiting period of 270 consecutive days before benefits for "pre-existing conditions" are available under the contract. The 270 day waiting period begins the subscriber's or dependent's effective date (or with the date his coverage began under a prior Blue Cross contract, if he receives credit for that coverage as outlined in this section "Credit Coverage under Prior Blue Cross and Blue Shield Contract"). To be entitled to benefits under the contract, the entire 270 day waiting period must be served before the member receives services or supplies or is admitted to the hospital for pre-existing conditions. A "pre-existing condition" includes any condition (including pregnancy), disease, disorder, or ailment (including those present at birth) either (a) which existed on or before the effective date of that member, whether or not its existence then was known or manifested, (b) for which there was any medical or surgical treatment, advice, or diagnosis within one year prior to the effective date of the member, or (c) is the result of treatment or is a .complication arising in the course of treatment of a condition in (a) or (b) prior to the expiration of the waiting period. For example, if a member is hospitalized because of a pre-existing condition before the waiting period has expired and the member develops decubitus ulcers in the course of the hospitalization, neither the

---

**4.** Plaintiff argues that the two-step analysis set forth in *Brown, supra,* applies. The court notes that the *Brown* analysis, which looks first to the plaintiff's interpretation of the plan provision and determines whether it is reasonable, and then determines whether the defendant was arbitrary and capricious in adopting a different interpretation, is applica-

ble when a heightened arbitrary and capricious standard is appropriate. *See Presley v. Blue Cross–Blue Shield of Alabama,* 744 F.Supp. 1051, 1056–57 (N.D.Ala.1990). Because the court has already determined that the heightened standard does not apply in the instant case, the court need not apply the two-step analysis articulated by Plaintiff.

hospital stay not the treatment for the decubitus ulcers would be covered.

(Pl.'s Ex. 9.) Blue Cross interprets the pre-existing condition exclusion to exclude coverage for services rendered to treat a condition for which a participant saw a physician and/or received care, prescription drugs, services or supplies prior to becoming covered under the Baptist Plan, whether the condition was known or unknown, unless that participant has completed the 270 day waiting period. (Mot. at 13.) Interpreting identical language, the Eleventh Circuit has held that the language "clearly excludes latent conditions that existed when [Plaintiff's] coverage became effective, even if the conditions did not manifest themselves in any way." *Price v. Blue Cross Blue Shield*, 232 F.3d 216, No. 00–10285 (11th Cir. Aug.22, 2000). Thus, the court finds that Blue Cross' interpretation clearly corresponds with the plain language of the provision.

▮▮▮ Having determined that the plan provision has been correctly interpreted, the court must next turn to whether Blue Cross' factual determination that Daniel's Crohn's disease was a pre-existing condition was arbitrary and capricious. *See Paramore v. Delta Air Lines, Inc.*, 129 F.3d 1446, 1451 (11th Cir.1997). Because the Baptist Plan affords Blue Cross discretion, Blue Cross' "fact-based determinations will not be disturbed if reasonable based on the information known to [Blue Cross] at the time the decision was rendered." *Paramore*, 129 F.3d at 1451. For the following reasons, the court finds that Blue Cross' denial of benefits on the basis of a pre-existing condition was reasonable and not arbitrary and capricious.

First, Blue Cross' decision was based upon substantial evidence. In July 1997, after Blue Cross initially denied Plaintiff's claim submitted under the diagnostic code for ulcerative colitis, Plaintiff resubmitted her claim under the diagnostic code for Crohn's disease. .Blue Cross subsequently requested Daniel's medical records. *Compare Shannon v. Jack Eckerd Corp.*, 113 F.3d 208 (11th Cir.1997) (holding that fail-ure to obtain and review additional relevant information prior to denying a claim is arbitrary and capricious). The records were reviewed in-house and by Blue Cross' Associate Medical Director William Hansford before Blue Cross ultimately concluded that Daniel's treatment was related to his diagnosis of ulcerative colitis and was therefore pre-existing.

Plaintiff appealed Blue Cross' denial and supplemented the record before Blue Cross with two letters from Daniel's treating physicians. The letters, which are set out in full in the facts section, indicate that Daniel's diagnosis of Crohn's disease is distinct from and unrelated to his diagnosis of ulcerative colitis. Based upon the newly submitted letters and a second review of Daniel's medical records, an independent reviewer, Dr. Salter, a surgeon, determined that Daniel's Crohn's disease was pre-existing. Dr. Salter's decision was based upon an early pathologist report, prior to the ulcerative colitis diagnosis, indicating a possibility of Crohn's disease and Dr. White's letter referring to multiple peri-anal fistuale and inflamation, which is a complication of Crohn's disease.

In December 1997, Plaintiff again appealed Blue Cross' denial. A third review of the medical evidence was conducted by an independent reviewer, Dr. Solomon, who is an internist. Dr. Solomon concluded that the claim was correctly denied because Daniel's history of inflammatory bowel disease indicated that his Crohn's disease began with his earlier diagnosis of ulcerative colitis.

Although the medical evidence was reviewed three times, twice by independent reviewers, Plaintiff claims that Blue Cross' denial was arbitrary and capricious. In support of her contention, Plaintiff relies upon the letters of Daniel's treating physicians indicating that Daniel's Crohn's disease was not pre-existing. However, Blue Cross reviewed the letters of Daniel's physicians, and the Eleventh Circuit has indicated that when a "treating physician has an economic interest in the matter" the

administrator is not required to accord the physician's conclusions any greater weight than that given other sufficiently reliable evidence. *Jett,* 890 F.2d at 1140. Moreover, as discussed above, as long as a reasonable basis exists for Blue Cross' decision, the decision must be upheld, "even if there is evidence that would support a contrary decision." *Id.* at 1139.

In the instant case, after a review of the evidence before Blue Cross at the time of its decision, the court cannot say that Blue Cross' denial was "completely unreasonable." *Brown,* 898 F.2d at 1564. Blue Cross considered the medical evidence as well as the letters submitted by Plaintiff concerning her claim. Plaintiff's submissions were reviewed by two independent physicians who reached the same conclusion as Blue Cross' in house staff. The reviewers have explained the bases for their decision that Crohn's was a pre-existing condition and the court finds their explanations rational based upon the information before them at the time of their decision. Stated differently, the court finds that there was a reasonable basis to support Blue Cross' factual determination that, based upon the medical evidence before it, Daniel's Crohn's disease was in fact a pre-existing condition under the terms of the plan. Thus, the court finds that Blue Cross' denial was not arbitrary and capricious.

Based on the foregoing, the court finds that Blue Cross is entitled to summary judgment as to Plaintiff's claim for benefits.

### ORDER

It is CONSIDERED and ORDERED that Defendant's Motion For Summary Judgment be and the same is hereby GRANTED. A judgment in accordance with the Memorandum Opinion And Order will be entered separately.