Kevin L. LEE, Plaintiff–Appellee,

v.

**BLUE CROSS/BLUE SHIELD OF ALABAMA, Defendant– Appellant.**

No. 92–6779.

United States Court of Appeals, Eleventh Circuit.

Jan. 6, 1994.

Gregory H. Hawley, Jeffrey A. Lee, Maynard, Cooper, Frierson & Gale, Birmingham, AL, for defendant-appellant.

Don F. Wiginton, Birmingham, AL, for plaintiff-appellee.

Before ANDERSON and BLACK, Circuit Judges, and NANGLE *, Senior District Judge.

NANGLE, Senior District Judge:

Appellant Blue Cross and Blue Shield of Alabama ("Blue Cross") appeals the district court's grant of summary judgment in favor of appellee Kevin L. Lee ("Lee"). We reverse.

## I.

Lee, an employee of Associated Doctors Health and Life Insurance Company ("Associated Doctors"), participated in Associated Doctors' group health care plan established pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.* Blue Cross provided medical, but not dental, insurance coverage to Associated Doctors' employees under this plan. The 1990 plan applies in the instant dispute.

---

* Honorable John F. Nangle, Senior U.S. District Judge for the Southern District of Georgia, sitting by designation.

In 1990, Lee began treatment for obstructive sleep apnea. Dr. Peter Waite, an oral and maxillofacial surgeon, proposed cutting and advancing Lee's jaws to move muscle mass forward and to elevate the hyoid bone to relieve airflow obstruction. To prepare Lee for this surgery, Dr. Waite referred Lee to Dr. David Sarver, an orthodontist. Dr. Sarver installed surgical arch wires to allow Dr. Waite to wire the jaws together during surgery, prepared molds of Lee's teeth to fabricate an occlusal wafer or splint which Dr. Waite could use as a guide in jaw placement, and applied braces to Lee's teeth to put them at a normal axial inclination relative to the jaw advancement. Lee received his braces on November 19, 1990, and Dr. Waite performed oral surgery on August 16, 1991.

Prior to surgery, Doctors Waite and Sarver contacted Blue Cross. Dr. Waite's September 28, 1990, letter sought prior authorization for the specific procedures to be performed, and enclosed Lee's progress notes, which indicated that Lee had been referred to Dr. Sarver for presurgical orthodontics. Dr. Sarver also wrote Blue Cross to ascertain what benefits were available for the orthodontic portion of his treatment plan. His November 7, 1990, letter informed Blue Cross that Dr. Waite had referred Lee to his office and that Lee required orthodontic decompensation, alignment, and stabilization preparatory for bimaxillary advancement. Blue Cross contacted Dr. Waite on December 6, 1990, with its determination that the proposed surgical procedures were medically necessary and payable under the contract. This final letter did not refer to or address Dr. Waite's reference to presurgical orthodontics or Dr. Sarver's correspondence in any manner. The record on appeal is devoid of any similar letter to Dr. Sarver.

Blue Cross paid for Lee's initial visit to Dr. Sarver under the plan's major medical benefits. Blue Cross ultimately refused to cover Dr. Sarver's $3,100.00 fee on the basis of the plan's dental exclusion.[1] After various unsuccessful attempts to resolve his claim, Lee filed suit in an Alabama court, and Blue Cross removed it to district court.

## II.

■ Upon cross-motions for summary judgment, the district court granted summary judgment to Lee. The district court noted specifically that it construed any ambiguity in the contract against the insurer under Alabama law, relied upon the inclusion of "... splints and braces ..." in the plan's Major Medical Coverage, discussed the lack of an exclusion for orthodontic services or appliances, and recognized that the plan did not exclude medically necessary orthodontic procedures performed as part of authorized surgery. We review a district court's grant of summary judgment de novo. *Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527 (11th Cir.1992).

### Standard of Review

■ A denial of benefits under an ERISA plan must be reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The Group Hospital and Major Medical Contract issued by Blue Cross to Associated Doctors contains language conferring discretionary authority upon Blue Cross to determine eligibility for benefits. The applicable policy provision reads as follows:

As a condition precedent to coverage, it is agreed that whenever [Blue Cross] makes reasonable determinations which are not arbitrary or capricious in the administration of the [plan] (including, without limitation, determinations whether services, care, treatment, or supplies are Medically Necessary, whether surgery is Cosmetic

---

1. The plan excludes coverage for "[s]ervices or expenses for the care, treatment, filling, extraction, removal, replacement or augmentation of teeth or structures directly supporting the teeth ... Also excluded are periodontal care, prosthodontal care, endodontic care, orthodontic care, or any other dental care ... This exclusion does not apply to those services by a Physician to treat or replace natural teeth when injured by Accidental Injury covered as Major Medical Benefits ..." Group Hospital Contract, § VI(5).

Surgery, or whether charges are reasonable), such determinations shall be final and conclusive.

Group Hospital Contract, § IX(K). In light of this provision, we must review Blue Cross' denial of benefits to Lee under the arbitrary and capricious standard. *Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir.1990) (construing identical language and finding Blue Cross to be operating as a fiduciary), *cert. denied*, 498 U.S. 1040, 111 S.Ct. 712, 112 L.Ed.2d 701 (1991); *see also Bruch*, 489 U.S. at 111, 109 S.Ct. at 954; *Jett v. Blue Cross & Blue Shield of Alabama, Inc.*, 890 F.2d 1137 (11th Cir.1989).

█ Application of the arbitrary and capricious standard requires us to look only to the facts known to the administrator at the time the decision was made to deny Lee coverage. *Jett*, 890 F.2d at 1139. From this information, we first must determine whether Lee has proposed a sound interpretation of the plan to rival Blue Cross' interpretation. *Brown*, 898 F.2d at 1570. If we find that he has, we then must evaluate whether Blue Cross was arbitrary and capricious in adopting a different interpretation. *Id.* Nonetheless, "a wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the fiduciary at the expense of the affected beneficiary ... unless the fiduciary justifies the interpretation on the ground of its benefit to the class of all participants and beneficiaries." *Id.* at 1566–1567. After reviewing Blue Cross' interpretation from the perspective of de novo review, *see Brown*, 898 F.2d at 1566, n. 12, we conclude that Blue Cross' interpretation was wrong.

*The Reasonableness of Lee's Interpretation*

█ We agree with the district court that the plan at issue is ambiguous in its treatment of medically necessary orthodontic services. On one hand, the plan covers "medically necessary" services or supplies, which are defined as appropriate and necessary for treatment of the insured's condition, provided for the diagnosis or care of the insured's condition, in accordance with standards of good medical practice, and not solely for the insured's convenience. Group Hospital Contract, § I(17), § III(i). Dr. Norman C. Davidson, Blue Cross' in-house dental consultant, agreed that Dr. Sarver's treatment was an appropriate and "dentally" necessary part of the care for sleep apnea.

On the other hand, the plan excludes "[s]ervices or expenses for the care, treatment, filling, extraction, removal, replacement or augmentation of the teeth or structures directly supporting the teeth," including orthodontic care. Group Hospital Contract, § VI(5). While the plan defines the dental care that it excludes, it does not clearly exclude medically necessary orthodontic care.[2] Lee's treatment involved cutting and advancing his jaws to correct a sleep disorder. Dr. Sarver's installation of the arch wires, preparation of molds, and placement of a splint facilitated Dr. Waite's surgery, while his application of braces allowed maximum movement of Lee's jaws and post-surgical use of Lee's teeth. An insured like Lee, whose oral surgery only incidentally involved his teeth, had no way of knowing that appropriate and necessary orthodontic care performed as part of a medically necessary surgery was excluded under the plan. *See, e.g., Blair v. Metropolitan Life Ins. Co.*, 974 F.2d 1219, 1221 (10th Cir.1992) (policy ambiguous where insured not reasonably expected to

**2.** In fact, the Associated Doctors' plan issued by Blue Cross in 1991 expressly accounts for such a situation by excluding the following:

Services or expenses of any kind which include care, treatment, services, supplies, or equipment within or related in any way to the oral cavity, regardless of whether required by congenital, developmental or accidental conditions, regardless of whether the purpose is to correct conditions within or without the oral cavity and regardless of whether necessary to enable a physician to render other services

which are medically necessary. By way of example and not limitation, braces to prepare an individual with a cleft palate for orthopedic surgery, for orthognathic surgery or any other procedure would not be covered ...

Group Hospital Plan Summary (1991), p. 20. The Court notes in passing that although Blue Cross argued that its 1990 plan unambiguously excluded orthodontic care, this changed language in the 1991 plan apparently concedes that the 1990 plan could be ambiguous.

"understand that [the dental exclusion] not only include[s] treatment directed at the teeth to correct a condition of the teeth, but also include[s] treatment for a dysfunction of muscles and joints, with teeth incidentally involved."); cf. *Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98 (2d Cir.1991) (where parties propose two reasonable interpretations of plan's exclusion of dental services, plan is at most ambiguous).

■ Having determined that the plan is ambiguous, we hold that application of the rule of contra proferentem is appropriate in resolving ambiguities in insurance contracts regulated by ERISA. This rule has been widely adopted among our sister circuits. See *Heasley v. Belden & Blake Corp.*, 2 F.3d 1249 (3d Cir.1993); *Phillips v. Lincoln Nat'l Life Ins. Co.*, 978 F.2d 302 (7th Cir.1992); *Glocker v. W.R. Grace & Co.*, 974 F.2d 540 (4th Cir.1992); *Delk v. Durham Life Ins. Co.*, 959 F.2d 104 (8th Cir.1992); *Masella v. Blue Cross & Blue Shield of Connecticut*, 936 F.2d 98 (2d Cir.1991); *Kunin v. Benefit Trust Life Ins. Co.*, 910 F.2d 534 (9th Cir.) (alternative holding), cert. denied, 498 U.S. 1013, 111 S.Ct. 581, 112 L.Ed.2d 587 (1990);[3] cf. *Blair v. Metropolitan Life Ins. Co.*, 974 F.2d 1219, 1222 (10th Cir.1992) (declining to apply contra proferentem but resolving ambiguities in insured's favor "consistent with basic trust principles"). But see *Brewer v. Lincoln Nat'l Life Ins. Co.*, 921 F.2d 150 (8th Cir. 1990) (declining to apply contra proferentem), cert. denied, — U.S. ——, 111 S.Ct.

2872, 115 L.Ed.2d 1038 (1991). Application of this rule requires us to construe ambiguities against the drafter; in so doing, we find that Blue Cross' interpretation was wrong.

■ In addition to the ambiguous contract, two factors support our conclusion that Lee's interpretation was reasonable. First, during the correspondence leading to preauthorization certification, Doctors Sarver and Waite's letters notified Blue Cross of the need for orthodontic treatment, but Blue Cross did not object or raise the dental exclusion.[4] Second, Blue Cross paid for Lee's first office visit to Dr. Sarver. The January 18, 1991, claim report sent by Blue Cross informs Lee that his major *medical* benefits paid 80% of the eligible charge. In light of Blue Cross' apparent silence during the preauthorization certification process and its subsequent payment of Lee's first visit to Dr. Sarver, Lee's interpretation of the policy is reasonable.[5]

### Blue Cross' Claims Decision

Since we have concluded that Lee has proposed a reasonable interpretation of the plan, we must examine whether Blue Cross was arbitrary and capricious in adopting a different interpretation of the plan. Under this inquiry, we consider Blue Cross' possible self-interest in making its claims determination to determine the correct standard of review. Before the district court, Blue Cross argued that its non-profit, state-regulated status[6] removed any profit motive from its

---

3. We note that all of the cited cases except *Kunin* involve a de novo review of the challenged insurance plan. Although the present matter is before us on an arbitrary and capricious analysis, use of these cases is appropriate since *Brown* instructs us to review de novo whether the insurer's interpretation of the plan is wrong. *Brown*, 898 F.2d at 1566, n. 12.

4. We do not suggest an estoppel argument. See *Nachwalter v. Christie*, 805 F.2d 956 (11th Cir. 1986) (ERISA preempts state common law doctrines such as estoppel); *Thomas v. Gulf Health Plan, Inc.*, 688 F.Supp. 590 (S.D.Ala.1988) (preadmission certification did not estop insurer from denying coverage). We note only that Blue Cross' apparent silence could have led Lee to reasonably believe that Dr. Sarver's orthodontic work was covered under the plan. Cf. *McDaniel v. Blue Cross & Blue Shield of Alabama, Inc.*, 780 F.Supp. 1363 (S.D.Ala.1992) (finding preadmission certification letter ambiguous).

5. We note that before the district court, neither party relied on this correspondence or Blue Cross' payment for Lee's first visit to Dr. Sarver. We have made these observations solely from the record on appeal.

6. Blue Cross is a "nonstock corporation[] organized not for profit for the purpose of establishing, maintaining and operating a health care service plan." Ala.Code § 10-4-100. See generally *Blue Cross & Blue Shield v. Protective Life Ins. Co.*, 527 So.2d 125 (Ala.Civ.App.1987) (discussing Blue Cross' limited statutory purpose): Blue Cross presented evidence that it seeks to maintain an adequate contingency reserve that covers two months of claims and operating expenses. Additionally, it provides insured groups with retrospective rate credits to offset premium increases in future years where the groups' paid claims and administrative expenses are less than the total premiums earned for that year. Blue

denial of Lee's claim. Since it lacks a profit motive, Blue Cross alleges that it did not operate under a conflict of interest and that its decision is entitled to a great deal of deference. On appeal, Lee argues that even if a profit motive were not present, Blue Cross' decision to deny coverage was motivated by business considerations such as remaining competitive in the insurance market. According to Lee, these business considerations implicate Blue Cross' self-interest, and make a highly deferential standard of review inappropriate.

Review under the arbitrary and capricious standard " 'must be contextually tailored.' " *Brown,* 898 F.2d at 1563–1564 (*citing Maggard v. O'Connell,* 671 F.2d 568, 571 (D.C.Cir.1982)). While we believe that the existence of a profit motive is one factor to consider in a fiduciary's self-interest, the lack of a profit motive is not necessarily dispositive of the self-interest dispute. Even without a profit motive, Blue Cross' desire to maintain competitive rates while providing optimum benefits would require it to reject marginal claims. If Blue Cross paid every claim submitted to it, its premiums would skyrocket. The fact that it does not pay every claim indicates that some form of self-interest, whether profit or the company's continued existence and success, is at work. The standard of review must be adjusted to reflect the inherent conflict in Blue Cross administering claims under a policy it issues. *See Brown,* 898 F.2d at 1561.

The record indicates that Blue Cross operated under a conflict of interest in allowing its employees to determine whether Lee had presented a payable claim under the policy. Dr. Norman C. Davidson, Blue Cross' in-house dental consultant, reviewed the letters and correspondence submitted by Lee and determined that Dr. Sarver's treatment was not covered by the plan. As a second tier review, Dr. Patrick Ryce, Blue Cross' Senior Vice President and Medical Director, independently analyzed Lee's file and upheld Dr. Davidson's conclusion. The district court should employ a less deferential arbitrary and capricious standard in light

of this factor. *See Anderson v. Blue Cross/ Blue Shield of Alabama,* 907 F.2d 1072 (11th Cir.1990) (tempering arbitrary and capricious review where insurer's employee made claims determinations); *Newell v. Prudential Ins. Co. of America,* 904 F.2d 644 (11th Cir.1990) (same).

Once a conflict of interest is established, the burden shifts to Blue Cross to prove that its interpretation of the plan was not tainted by self-interest. *Brown,* 898 F.2d at 1566. Blue Cross may "purge the taint of self-interest" by proving that its interpretation of the policy was calculated to maximize benefits to participants in a cost-efficient manner. *Id.* at 1568. If Blue Cross successfully shows that its choice was in the interests of the participants and beneficiaries, Lee may still succeed by showing that the action was arbitrary and capricious by other measures. *Id.*

### Conclusion

Having concluded that Lee made a reasonable interpretation of the plan, the district court should apply the second prong of the *Brown* analysis to Blue Cross' denial of Lee's claim. Specifically, the court should consider evidence presented by Lee to rebut Blue Cross' claims of lack of a profit motive or self-interest and by Blue Cross to demonstrate that its claims decision maximized benefits to participants and beneficiaries. In accordance with our foregoing analysis, we REVERSE and REMAND for proceedings not inconsistent with this opinion.

BLACK, Circuit Judge, dissenting.

I respectfully dissent. I believe the district court erred when it found that the plan at issue is ambiguous.

---

Cross asserts that this manner of organization removes any profit motive on its behalf in paying or denying claims. *See* Aff. of Carl Caudle, Underwriting Dept. Mgr.