**Diane DIBICCARI, Plaintiff,**

v.

**THE LOCKHEED MARTIN RETIREMENT PLAN, et al., Defendants.**

**No. 8:00–CV–2025–T–30TGW.**

United States District Court,
M.D. Florida,
Tampa Division.

Nov. 19, 2002.

John V. Tucker, Anderson & Tucker, St. Petersburg, FL, for Diane Dibiccari, plaintiff.

Devon L. Gosnell, Ford & Harrison LLP, Tampa, FL, for Lockheed Martin Retirement Plan for Certain Hourly Employees, Lockheed Martin Corporation, defendants.

## ORDER GRANTING JUDGMENT IN FAVOR OF PLAINTIFF

MOODY, District Judge.

THIS CAUSE came on for a bench trial on October 24, 2002, in Tampa, Florida. Both parties submitted documentary evidence. Plaintiff testified and Defendants called Dr. Brath as a witness. The parties submitted written findings of fact and conclusions of law (Dkts.# 39, # 40) and Defendants submitted a trial brief and bench memorandum (Dkt.# 43). The Court having reviewed the evidence and being advised in the premises determines that Plaintiff is entitled to judgment in her favor for back benefits up to the date of the filing of the Complaint herein, to wit: September 29, 2000. The Court declines to make a finding as to future benefits.

### FACTUAL BACKGROUND

Plaintiff Diane Dibiccari was employed by the Lockheed Martin Corporation or one of its subsidiaries from 1978 until 1990 and participated in Lockheed's Retirement Plan for Certain Hourly Employees. The plan is a defined benefit pension plan under which an eligible participant may receive a monthly benefit upon retirement. The plan provides an accelerated retirement benefit for employees who are totally and permanently disabled. Section 5.04(B) of the plan defines total and permanent disability as follows:

> Total and Permanent Disability. A Member shall be deemed to be totally

and permanently disabled, when, on the basis of medical evidence satisfactory to the Benefit Plan Committee, the Benefit Plan Committee finds that he is wholly and permanently prevented from engaging in any occupation or employment for wage or profit as the result of bodily injury or disease, either occupational or non-occupational in cause, except such employment as found by the Benefit Plan Committee to be so irregular as to time and nature that it should be excepted, or is found by the Benefit Plan Committee to be for purposes of rehabilitation.

Section 1303(B) ("Responsibilities of Named Fiduciaries"), of the Plan provides in pertinent part:

The Benefit Plan Committee shall have the responsibility, authority and discretion necessary, except to the extent provided in the collective bargaining agreement, to control the operation and administration of the Plan in accordance with the terms of the Plan and Trust Agreement, including without limiting the generality of the foregoing, ... (3) the determination of benefit eligibility and amount and certification thereof to the Trustee ... (12) interpretation and construction of Plan provisions; (13) establishment of procedures to be followed by Members and Beneficiaries in filing applications for benefits....

The Benefit Plan Committee shall have full discretion to construe and interpret the terms and provisions of this Plan, which interpretation or construction shall be final and binding on all parties, including but not limited to the Corporation and any Participant or Beneficiary, except as otherwise provided by law.

If a Plan participant is eligible for disability retirement benefits, the participant will continue to receive that benefit for the duration of the disability or until reaching age 65, whichever happens first. At age 65, a disability retiree converts to a retiree and receives a normal retirement benefit without regard to disability status. Plan, § 6.04(d).

In October 1990, Dibiccari fell in her driveway after returning home from work and claimed that she injured her back. She never returned to work after that injury. Effective November 1, 1990, Dibiccari began a "prolonged absence from work," which employees of Lockheed may take for a period of up to two years.

On September 18, 1992, Dibiccari filed an application with the Lockheed Martin Retirement Program for early receipt of retirement benefits on the grounds that she had become totally and permanently disabled. With her application, Dibiccari submitted a one-page report from Dr. Daniel Asimus containing the following diagnoses: 1) obsessive-compulsive disorder; 2) major depression; 3) migraine headaches and dizziness; and 4) low back pain with neuralgia. Under "Pertinent Physical Findings," Dr. Asimus listed: "[n]o physical exam, mental status reveals profound depression, suicidal thoughts, anxiety, and stays in bed all day and not eating well and hypersomnia." He described her prognosis to be "[g]uarded, uncertain."

Dibiccari's claim was reviewed by Dr. J.C. Santos, a Lockheed staff physician. He concluded that Dr. Asimus did not establish that Dibiccari was totally and permanently disabled. And, accordingly, her application was denied. Pursuant to the terms of the Plan, she appealed to the Retirement Plan Committee. There, her application was reviewed by Dr. Brath, medical consultant to the Committee, who rendered an opinion on December 15, 1992, that he did not find Dibiccari to be totally and permanently disabled. The Retirement Plan Committee adopted that opinion

and notified Dibiccari on February 12, 1993, that her appeal was denied.

Several years thereafter, in 1997, Dibiccari was allowed to reinstate the appeal of the denial of her disability claim. She was invited to submit additional medical information in support of her claim. Dibiccari submitted a report from a psychiatrist, Daphna Slonim, M.D., dated in February, 1994. Dr. Slonim opined that Dibiccari was totally and permanently disabled for psychiatric reasons and gave the following diagnoses: 1) Obsessive-compulsive disorder, severe; 2) Major depression, severe; 3) Chronic, organic bran (sic) disorder N.O.S.; and 4) Anxiety disorder N.O.S.

In particular, Dr. Slonim opined:

*Opinion as to Disability Rating:*

On the basis of this present psychiatric study, I believe that Ms. Dibiccari has been vocationally disabled as a result of the above-described work-related factors. She reports herself suffering from a combination of physical and emotional disabilities.

The readers of this report are advised that the assessment, treatment, and rating of her physical disability are beyond the purview of the undersigned examiner, and rightfully belong under the jurisdiction of other medical specialists.

From a psychiatric viewpoint, I believe she has suffered emotional, mental, psychological and personality distresses as a direct result of the industrial factors and continued inability to work at her usual/former occupation. The combination of physical and emotional disabilities have caused her to have difficulties in functioning in her every day world. I believe that her present disabilities are due in part, at least, to psychological factors, and in my opinion, these psychological factors are the result of the claimed exposure.

It is my opinion that for workers compensation rating purposes, Ms. Dibic-

cari's psychological status is permanent and stationary, and is of a total degree of impairment. I find Ms. Dibiccari 100% permanently disabled for life.

*Apportionment:*

From the historical data reviewed, it is my opinion that there is no indication for apportioning the above-described industrially-related disability. It does appear that Ms. Dibiccari was functioning quite satisfactorily in her work situation prior to the work accident. If other evidence is presented which warrants a review of the above impressions, I shall be glad to consider such data.

*Objective Factors of Disability:*

Limited panic attacks, sleeping 16–20 hours a day, being socially withdrawn, losing her temper, indecisiveness, decreased functioning in hobbies and in the household, impaired concentration and memory, crying spells, avoiding driving, self neglect.

*Subjective Factors of Disability:*

Depression, anxiety, worries, hopelessness, tension, nervousness, irritability, anhedonia, back pain, headaches, weakness, fatigue, lack of energy, loss of self esteem and self confidence, lack of motivation, guilt feelings, suicidal ideation, dizzy spells, chest pain, pain in both neck and shoulders, stomach ache, ringing in both ears.

*Work Restriction:*

N/A. I don't see Ms. Dibiccari able to work.

*Vocational Rehabilitation:*

N/A, as Ms. Dibiccari is permanently totally disabled.

*Future Psychiatric Care:*

Ms. Dibiccari should continue to take psychotropic medications and be under psychiatric follow up for at least once a month for at least five years, and probably for life.

More intensive psychological or psychiatric care should be made available in case of deterioration in the future, including hospitalization. The risk for suicide is moderate.

Lockheed again referred Dibiccari's appeal to Dr. Brath for review. Dr. Brath is a general physician and a good portion of his practice is related to reviewing work-related claims. Dr. Brath also had before him for review a Functional Capacity Evaluation (FCE) which had been requested by Lockheed. The FCE was conducted on October 13, 1997, by a physical therapist who reported that Ms. Dibiccari had, in several instances, failed to make a good faith effort in the testing procedure. Dr. Brath construed the results of the FCE to support a finding that Dibiccari was "able to work at the No Classification (sic) physical demand level for an eight hour day." Dr. Brath testified that he interpreted this to mean that Ms. Dibiccari was able to work even though he acknowledged that there is no such classification as a "No Classification physical demand level" and he does not really know what the reporting therapist meant by the use of that language.

The Court questions whether this language was not merely occasioned by the therapist filling in a blank with the phrase "No Classification" rather than one of the standard physical demand levels provided by regulation because the therapist was unable to classify Ms. Dibiccari's physical demand level. It is unnecessary for the Court to resolve this issue. Even if Dr. Brath were wrong in accepting this language as an indication that Ms. Dibiccari was able to work, the Retirement Plan Committee would have been entitled to rely upon his "wrong" opinion. But, in any event, these physical findings and Dr. Brath's reliance thereon are unable to overcome the psychiatric opinion of Dr. Slonim. Other than a reference to "obses-sive-compulsive disease," there is nothing to refute her opinion of psychiatric disability.

On March 30, 1998, the Committee issued its final decision and stated the following reason for denying Dibiccari's appeal in a letter to her:

The committee, in its review, found that the results of the Functional Capacity Evaluation completed on October 10, 1997 indicated that you are able to work at a No Classification physical demand level for an eight hour day. The Functional Capacity Evaluation indicated that you are apparently not giving a full, valid effort during the testing and that during the testing, there was no evidence noted for obsessive-compulsive disease. It is for these medical reasons that the committee disqualified you for being eligible for disability retirement benefits.

### STANDARD OF REVIEW

The parties agree that this action is subject to an arbitrary and capricious standard of review by the Court. The arbitrary and capricious analysis is two-pronged. First, the Court must determine from a *de novo* review of the record whether the administrator was right or wrong in its claim determination. *Lee v. Blue Cross Blue Shield,* 10 F.3d 1547 (11th Cir.1994). If the Court determines the administrator was "right," then the analysis ends and judgment is entered for Defendants. However, if the Court determines that the administrator was "wrong," then the Court must evaluate whether the administrator acted arbitrarily and capriciously in denying Plaintiff's claim. A "wrong" but reasonable determination may not be overturned under the standard of review, but a wrong and unreasonable decision by the administrator is subject to reversal. *HCA Health Services of Geor-*

*gia, Inc. v. Employers Health Insurance Co.,* 240 F.3d 982 (11th Cir.2001). Whether a claim decision is arbitrary and capricious requires a determination "whether there was a reasonable basis for [the administrator's] decision, based upon the facts as known to the administrator at the time the decision was made." *Jett v. Blue Cross Blue Shield of Alabama, Inc.,* 890 F.2d 1137, 1139 (11th Cir.1989).

### LEGAL ANALYSIS

■ This Court denied Defendants' Motion for Summary Judgment on the grounds that Dr. Brath and the Retirement Plan Committee, however they interpreted the FCE results, were rejecting Plaintiff's evidence of a psychiatric disability based on the results of a physical test. At trial, Defendants shifted to a new argument. Even though the committee's letter denying Dibiccari's appeal stated its reason for denial to be that it "found that the results of the Functional Capacity Evaluation completed on October 10, 1997 indicated that you are able to work at a No Classification physical demand level for an eight hour day," its argument at trial was that it was not under any obligation to make any findings. Rather, it was Plaintiff's obligation to prove her disability as of September 30, 1992 (after which time she was no longer covered under the terms of the plan). Defendants' argument is stated succinctly on page 3 of its Bench Memorandum where it states:

> When DiBiccari first applied for benefits she submitted only a one (1) page Physician's Certificate, signed by Daniel M. Asimus, M.D. which stated that her condition was "guarded and uncertain." "Guarded and uncertain" does not mean "total and permanent." When DiBiccari was given another opportunity to submit evidence of her alleged total and permanent disability long after her time for appeal expired, she submitted only four (4) pages of a report by Dr. Daphna

Slonim, which included a medical opinion regarding DiBiccari's condition as of February 28, 1994. Thus, DiBiccari has never presented any medical evidence demonstrating that she was totally and permanently disabled when she was covered by the Plan.

The Court agrees with Defendants' assessment of the opinion submitted by Dr. Asimus which described Ms. Dibiccari's condition as "guarded and uncertain." "Guarded and uncertain" does not mean "total and permanent." But, this Court disagrees with Defendants' characterization of Dr. Slonim's opinion as one establishing Dibiccari's condition "as of February 28, 1994." Dr. Slonim's opinion was that Ms. Dibiccari was totally disabled and she related that disability from the time of her on-the-job "accident." While there was no on-the-job "accident" (Ms. Dibiccari claims to have fallen in her driveway after getting home from work and claims physical disabilities from exposure to toxic chemicals at work), Dr. Slonim opined that Ms. Dibiccari was psychiatrically disabled since that time. In her report, Dr. Slonim referred to Ms. Dibiccari as being "vocationally disabled as a result of the above-described work-related factors." Dr. Slonim further reports: "[i]t does appear that Ms. Dibiccari was functioning quite satisfactorily in her work situation prior to the work accident." From these comments and the overall tenor of Dr. Slonim's report, it is clear that Dr. Slonim is of the opinion that Ms. Dibiccari was able to work before the onset of these factors but was totally disabled thereafter. This is particularly so when Dr. Slonim's opinion is taken together with that of Dr. Asimus that Ms. Dibiccari was psychiatrically disabled in September 1992.

It is also particularly persuasive that Plaintiff seeks benefits for a psychiatric disability and Dr. Slonim is a psychiatrist.

Defendants attempt to review Plaintiff's claim consisted of ordering a physical examination (FCE) and a review by a general physician. On this record, the Court finds this inadequate.

Therefore, the decision of the Retirement Plan Committee was both wrong and unreasonable. It was wrong and unreasonable to base its denial on a physical therapist's findings of physical capacity to reject a claimed psychiatric disability, and it was wrong and unreasonable to reject out of hand Dr. Slonim's opinion as constituting no evidence of Ms. Dibiccari's claimed psychiatric disability at the time she quit working. Since the denial was both wrong and unreasonable, the Court determines that Plaintiff is entitled to all claimed benefits up to the time of filing her Complaint herein. The Court declines to render an opinion about Ms. Dibiccari's entitlement to benefits beyond that point because Lockheed may wish, as permitted by the plan terms, to obtain its own opinion concerning Ms. Dibiccari's psychiatric condition.

For the reasons stated, it is hereby ORDERED AND ADJUDGED that:

1. Judgment is GRANTED in favor of Plaintiff for all back due benefits due under the plan terms up until the time of filing the Complaint herein, to wit: September 29, 2000. The parties are directed to agree on the amount due and Plaintiff shall submit a Final Judgment for that amount within twenty (20) days or, failing which, schedule a hearing before this Court.

2. Jurisdiction is reserved for the purpose of entering a Final Judgment, and for taxing fees and costs.

3. The Clerk is directed to close this file.