**Susan KIRK, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE CO., Defendant.**

**No. 8:03–CV–1874–T–17MSS.**

United States District Court,
M.D. Florida,
Tampa Division.

July 22, 2003.

---

2. Even if the *Hensgens* factors are the appropriate analysis, the court would reach the same result for this reason.

Michael Alan Steinberg, Michael A. Steinberg & Associates, Tampa, FL, for Plaintiff.

Ralph C. Losey, Stephanie A. Segalini, Akerman Senterfitt, Orlando, FL, for Defendant.

### ORDER

KOVACHEVICH, District Judge.

This cause is before the Court on Plaintiff's Motion for Summary Judgment, filed February 3, 2004, (Doc. No. 9), Plaintiff's Response thereto and Motion to Strike, filed March 1, 2004 (Doc. No. 13), and Defendant's Motion for Summary Judgment, filed April 30, 2004 (Doc. No. 17). Defendant's Motion to Strike is granted. Plaintiff's Motion for Summary Judgment is denied, and Defendant's Motion for Summary Judgment is granted.

### I. Motion to Strike

Fed. R. Civ. Pro. 12(f) allows the district court to strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike on the grounds of insufficiency, immateriality, irrelevancy and redundancy are not favored, often being considered "time wasters," and will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties. *Poston v. American President Lines, Ltd.,* 452 F.Supp. 568, 570 (S.D.Fla.1978), (citing *Augustus v. Board of Public Instruction,* 306 F.2d 862 (5th Cir.1962)).

In Employee Retirement Income Security Act (ERISA) actions, "the court may review the decision of the Plan administrator only on the basis of those materials available to the administrator at the time the final appeal decision was rendered." *Carnaghi v. Phoenix Am. Life Ins. Co.,* 238 F.Supp.2d 1373, 1377 (N.D.Ga.2002). Further, when the Court applies the heightened arbitrary and capricious standard analysis, it may only look to the evidence before the Defendants at the time the benefits decision was made. *Johnson*

*v. New York Life Ins. Co.*, 2001 WL 1736879 (M.D.Fla.2001).

Plaintiff seeks to introduce into the record a copy of the description of the job of a manager, financial institution, from the Dictionary of Occupational Titles complied by the U.S. Department of Labor. Defendant moves to strike this exhibit because it is not contained in Plaintiff's Administrative Record. This Court has examined the Administrative Record, and, applying the heightened arbitrary and capricious standard, finds that this job description was not included in the Administrative Record. Thus, Defendant's Motion to Strike the job description from the Dictionary of Occupational Titles is granted.

## II. Motions for Summary Judgment

### A. Standard of Review for Summary Judgment

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Id.* at 323, 106 S.Ct. 2548. A material fact is one which "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In determin-

ing whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion, and resolves all reasonable doubts against the moving party. *Id.* at 255, 106 S.Ct. 2505. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec, Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Standard of Review for ERISA Claims

The Eleventh Circuit "has adopted the following standards for reviewing administrators' plan interpretations: (1) *de novo* where the plan does not grant the administrator discretion[;] (2) arbitrary and capricious [where] the plan grants the administrator discretion; and (3) heightened arbitrary and capricious where there is a conflict of interest." *HCA Health Servs. of Ga., Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 993 (11th Cir.2001) (quoting *Buckley v. Metropolitan Life*, 115 F.3d 936, 939 (11th Cir.1997)) (emphasis omitted); *see also Levinson v. Reliance Standard Life Ins. Co.*, 245 F.3d 1321 (11th Cir.2001); *Vickers v. Guardian Life Ins. Co. of America*, 204 F.Supp.2d 1326, 1329–30 (M.D.Fla.2002). When a court reviews a claims administrator's benefits determination, the court must follow a series of steps. *Id.* At each step, the court makes a determination that results in either the progression to the next step or the end of the inquiry. *Id.*

First, a court begins by looking at the plan documents to determine whether the plan documents grant the claims administrator discretion to interpret disputed terms. *Id.* If so, then the court applies arbitrary and capricious review and possibly heightened arbitrary and capricious re-

view. *Id.* Regardless of whether arbitrary and capricious or heightened arbitrary and capricious review applies, the court must evaluate the claims administrator's interpretation of the plan to determine whether it is "wrong." *Id.* (citing *Godfrey v. Bell-South Telecomms., Inc.*, 89 F.3d 755, 758 (11th Cir.1996)); *Brown v. Blue Cross & Blue Shield of Ala., Inc.*, 898 F.2d 1556, 1566 n. 12 (11th Cir.1990) ("[i]t is fundamental that the fiduciary's interpretation first must be 'wrong' from the perspective of de novo review before a reviewing court is concerned with the self-interest of the fiduciary."). "Wrong" is the label used to describe the conclusion a court reaches when, after reviewing the plan documents and disputed terms de novo, the court disagrees with the claims administrator's plan interpretation. *Id.* at 993–4 (citing *Yochum v. Barnett Banks. Inc.*, 234 F.3d 541 (11th Cir.2000)); *Marecek v. BellSouth Telecomms., Inc.*, 49 F.3d 702, 705 (11th Cir.1995) (explaining a court must decide if the administrator correctly interpreted the plan); *Brown*, 898 F.2d at 1566 n. 12 (citations omitted) (explaining that the first step in application of arbitrary and capricious standard is determining legally correct interpretation of disputed plan provision). If the district court agrees with the ultimate decision of the administrator, it will not decide whether a conflict exists. *Id.* at 993–4 (citing *Marecek*, 49 F.3d at 705). Only when the court disagrees with the decision, i.e. the decision is "wrong," does it look for a conflict and, when it finds such a conflict, it reconsiders the decision in light of this conflict. *Id.*

■ If the court determines that the claims administrator's interpretation is "wrong," the court then proceeds to decide whether "the claimant has proposed a 'reasonable' interpretation of the plan." *Id.* at 994 (citing *Lee v. Blue Cross & Blue Shield of Ala.*, 10 F.3d 1547, 1550 (11th Cir.1994)). When an ERISA plan is ambiguous, the principle of *contra proferen-*

*tem* requires that ambiguities be construed against the drafter of a document; as such, the claimant's interpretation is viewed as correct. *Lee,* 10 F.3d at 1551; *Florence Nightingale Nursing Serv., Inc. v. Blue Cross & Blue Shield of Ala.,* 41 F.3d 1476, 1481 n. 4 (11th Cir.1995). However, even if the court determines that the claimant's interpretation is reasonable, the claimant does not necessarily prevail because the plan documents explicitly grant the claims administrator discretion to interpret the plan and the administrator is entitled to the benefit of its contractual bargain. *Id.* (footnote omitted) (citing *Brown,* 898 F.2d at 1563). Therefore, to find a claims administrator's interpretation arbitrary and capricious, the court must overcome the principle of trust law which states that a trustee's interpretation will not be disturbed if it is reasonable. *Id.* (citations and footnote omitted).

■ Thus, the next step requires the court to determine whether the claims administrator's wrong interpretation is nonetheless reasonable. *Id.* If the court determines that the claims administrator's wrong interpretation is reasonable, then this wrong but reasonable interpretation is entitled to deference, unless the claims administrator suffers from a conflict of interest. *Id.* Therefore, the next step in the analysis requires the court to gauge the self-interest of the claims administrator. *Id.* If no conflict of interest exists, then only arbitrary and capricious review applies and the claims administrator's wrong but reasonable decision will be upheld. *Id.* (citing *Lee,* 10 F.3d at 1550).

■ If a conflict of interest does exist, then heightened arbitrary and capricious review applies. *Id.* In applying heightened arbitrary and capricious review, the court follows the same steps that constitute arbitrary and capricious review, but given the claims administrator's self inter-

est, it continues the inquiry. *Id.* Under the heightened arbitrary and capricious standard of review, the burden shifts to the claims administrator to prove that its interpretation of the plan is not tainted by self-interest.[1]

### C. Analysis of Plaintiff's Motion for Summary Judgment

Plaintiff Kirk asserts that she left work on March 17, 2002, having been diagnosed with severe recurrent migraine headaches. In April 2002, she stated that her headaches occurred once per week, to once every three months. These headaches would last from several hours to as long as one to three days. Her test results (EEG and CAT scans) from this month indicated no abnormalities. In May of 2002, she advised her doctor that the headaches were occurring daily. Throughout this time, she was advised to remain off work, and in September, 2002, she reported to her doctor that she continued to have "daily absolutely severe excruciating headaches." (Doc. No. 9, pg.4). Her test results continue to reflect no abnormalities throughout this time period, and her treating physician Dr. Martinez, remarks that her condition is "something I have seen in migraine headaches all the time," and that he did not think she had a seizure disorder. (Doc. No. 20, Kirk A.R. pg. 106). She is also seen by Dr. Rodriguez, who on July 27, 2002, remarks that Plaintiff Kirk's "headaches are better overall with decreased intensity," yet recommends total disability and diagnoses the Plaintiff with post-concussive syndrome and seizure disorder. (Doc. No. 20, Kirk A.R. pg. 118). Her file was reviewed by independent physician consultant, Dr. Porter in October, 2002, who concluded that her condition in April, 2002, was not a disabling condition

that would cause inability to work. After this evaluation, Defendant Metropolitan Life Insurance Company ("MetLife") denied Plaintiff's claim for disability benefits, which she appealed in January, 2003. In December, 2002, Plaintiff was examined by Dr. Wu, a psychologist, in order to discern if she would qualify for Social Security Disability benefits. Dr. Wu concluded that she exhibited obvious cognitive deficits and was not capable of returning to her former level of cognitive function or employment. Plaintiff Kirk submitted Dr. Wu's evaluation conclusions in her appeal of her disability denial, and her file was ultimately reviewed by Dr. DeSousa in April of 2003. Dr. DeSousa stated that despite her assertions of a skull defect due to an infant surgery, her MRIs do not mention any skull defect, and that "this probably should be seen on a skull x-ray or CAT scan." (Doc. No.20, Exhibit B, Kirk A.R. pg. 248). He concludes by questioning the reality of Plaintiff Kirk's symptoms, and asserts that patients experiencing these kinds of headaches can be controlled with medication. This is the last known evaluation of Plaintiff Kirk asserted in the Administrative Record, and Plaintiff Kirk's disability denial is upheld on May 29, 2003.

Plaintiff Kirk asserts that summary judgment should be granted in her favor because the Defendant's denial was arbitrary and capricious because it failed to consider the mental requirements and skill level of her occupation and whether her impaired condition would affect her ability to perform the responsibilities of her occupation. She argues that the medical evidence clearly illustrates the severity of her current condition, demonstrating that "she would not be capable of returning to former level of cognitive nor former level of

---

1. The claims administrator satisfies this burden by showing that its "wrong but reasonable" interpretation of the plan benefits the class of participants and beneficiaries. *HCA,* 240 F.3d at 995 (citing *Brown,* 898 F.2d at 1568).

employment." (Doc. No. 9, pg.15) (citing B.S. 291–297). She further asserts that the Defendant cannot justify its decision by arguing that it was a benefit to the class of all participants, and as such was arbitrary and capricious, in violation of ERISA Sections 502(a)(1)(B) and (a)(3), 29 U.S.C. Section 1132(a)(1)(B).

Defendant responds by arguing that Plaintiff selectively highlights favorable medical evidence to illustrate the severity of her condition, and that her own treating physicians reflected conflicting evidence as to the extent and degree of her disability. (Doc. No. 13, pgs.3, 6). Defendant argues that overwhelming evidence in the Administrative Record demonstrates that she is not totally disabled, and, is, in fact, capable of performing her own occupation. Defendant asserts further that summary judgment should not be granted because her claim for benefits is based predominantly on the recommendations of her sympathetic treating physician, and that the United States Supreme Court has rejected any special deference for the opinions of treating physicians by plan administrators. Defendant MetLife argues that Dr. Martinez, as treating physician, must presume Plaintiff Kirk's truthfulness in asserting her inability to work, whereas the plan administrator need not, and that it further holds a duty to its policy-holders to fully investigate any claims and deny those that are unsubstantiated.

This Court has examined the plan documents and concludes that they clearly grant the claims administrator the discretion to interpret disputed terms, which include the definitions of "disability/disabled" and Plaintiff's occupation. Specifically, the plan states that:

> ...the Plan administrator and other Plan fiduciaries shall have discretionary authority to interpret the terms of the Plan and to determine eligibility for and entitlement to Plan benefits in accordance with the terms of the Plan. Any interpretation or determination made pursuant to such discretionary authority shall be given full force and effect, unless it can be shown that the interpretation or determination was arbitrary and capricious.

(Doc. No. 20, Exhibit A, Plan pg. 44).

In support of its denial of Plaintiff's claim for disability benefits, Defendant MetLife asserted that the information from the Administrative Record was not consistent with that of a serious pathology, there was no explanation for why the headaches would have gotten worse, there was no record evidence indicating when Plaintiff Kirk initially hit her head in December of 2001, and there was no comment during physical examination of a 'soft spot' on her head. It is not clear that such evidence regarding the alleged December 2001 injury was ever offered by the Plaintiff or requested by the Defendant. This Court has reviewed the evidence from the Administrative Record, and concludes that because of the conflicting opinions of the various physicians who attended to Plaintiff Kirk, the decision to deny her disability benefits was not "wrong" as a matter of law. This Court has reviewed the plan documents and disputed terms *de novo*, and does not disagree with the claims administrator's plan interpretation. Because this Court has determined the plan administrator's decision not to be wrong, it need not proceed further to determine whether a conflict of interest exists. Thus, Plaintiff's motion for summary judgment is denied.

### D. Analysis of Defendant's Motion for Summary Judgment

Defendant MetLife asserts that summary judgment in its favor is appropriate because its decision to deny benefits to Plaintiff Kirk was correct under both the

arbitrary and capricious and heightened arbitrary and capricious standards of review. Defendant relies on Administrative Record evidence to argue that the plaintiff's own physicians, as well as independent physicians, offered evidence that the plaintiff was capable of working. The Defendant posits additionally that even if this Court were to find Defendant's decision to be wrong, that summary judgment would still be appropriate because Plaintiff Kirk's own interpretation of the plan is not reasonable. Further, the Defendant asserts that even if the plaintiff's interpretation were reasonable, its decision to deny benefits was made in the interest of the class of participants and beneficiaries, to prevent rising costs of premiums for all plan participants.

Since this Court has found that Defendant MetLife's decision to deny benefits to Plaintiff Kirk was not 'wrong,' it need not address the additional arguments proffered by the Defendant regarding Plaintiff's interpretation, the intended class of beneficiaries, and further policy implications. The Court follows its earlier opinion that "as long as a reasonable basis appears for decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision." *Payne v. Ryder System, Inc. Long Term Disability Plan,* 173 F.R.D. 537, 542 (M.D.Fla.1997) (quoting *Jett v. Blue Cross and Blue Shield of Alabama,* 890 F.2d 1137, 1140 (11th Cir. 1989)). Defendant MetLife's decision to deny Plaintiff benefits is supported by a rational basis, based on the facts possessed at the time of its decision. In reviewing Plaintiff's medical records, there is, at best, minimal evidence that Plaintiff is unable to return to work. There is no medical evidence within the administrative record reflecting the presence of a 'soft spot,' and there is no evidence that the Plaintiff sought medical treatment after her December 2001 injury and loss of con-

sciousness. The administrative record illustrates repeatedly that Plaintiffs' test results were normal and "unremarkable." (Doc. No. 20). The Defendant's decision was based on objective medical evidence, including the opinions of Plaintiff's own physicians and independent physicians. Based on this objective medical evidence, the Defendant's application of the terms of its plan is reasonable. The Court concludes that Defendant MetLife's decision was neither arbitrary nor capricious, and summary judgment is appropriate.

Further, even if analyzed under a heightened arbitrary and capricious standard of review, summary judgment would still be appropriate in this case. The Eleventh Circuit has held that a heightened standard of review is appropriate, in certain cases, where an insurer is also the claims fiduciary entrusted with determining the eligibility for benefits under an ERISA plan. *See Brown,* 898 F.2d at 1556. Even under this heightened standard of review, summary judgment is still appropriate where there is no evidence of bias, and no evidence of abuse of discretion. *Taft v. The Equitable Life Assurance Society,* 9 F.3d 1469 (9th Cir.1994). Plaintiff Kirk has offered no evidence that the Defendant acted in bad faith or had any improper motives. There is ample medical evidence to demonstrate that Defendant MetLife's decision was unbiased and objective, including the opinions and conclusions of Plaintiff's own physicians, as well as the two independently conducted reviews. Therefore, there is no evidence that Defendant MetLife abused its discretion, and summary judgment is appropriate even under a heightened standard of review. Accordingly, it is

**ORDERED** that Plaintiff's motion for summary judgment (Doc. No. 9), filed February 3, 2004, be **DENIED**, Defendant's motion for summary judgment (Doc. No.

17), filed April 30, 2004, be **GRANTED**, the motion to strike (Doc. No. 13), filed March 1, 2004, be **GRANTED**, and the Clerk of Court be directed to enter judgment for the defendant and close this case.